*In re* LOREN MARQUARDT.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, *v.* LOREN MARQUARDT, Respondent-Appellee.)

First District (2nd Division)    No. 80-2582

Opinion filed October 6, 1981.

Richard M. Daley, State's Attorney, of Chicago (Glenn E. Carr and Mark R. Davis, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ina S. Marks, Assistant Public Defender, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Does drug dependence constitute a mental illness under the Mental Health and Developmental Disabilities Code of 1979 (hereinafter referred to as MHDD Code) (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*)? A petition was filed in the circuit court alleging that respondent Loren Marquardt was a person subject to involuntary admission under section 1—119 of the MHDD Code.[1] After a bench trial, the court entered a finding that respondent was not subject to involuntary admission. The State appeals.

On August 22, 1980, Deloris Mochizuki filed a petition alleging that her son, respondent, was mentally ill and reasonably expected to harm himself in the near future. At a hearing the only witnesses were Mrs. Mochizuki and Dr. Carlos M. Deeb, M.D., the treating psychiatrist. Mrs. Mochizuki testified that her son had been hospitalized on three occasions during 1980 for drug overdoses, prior to his current stay at Madden Mental Health Center.

Respondent was at the time Dr. Deeb's patient at Madden and had been for three weeks. Respondent had also been his patient during a previous stay at Madden. Respondent refused to talk to Dr. Deeb during

---

[1] Section 1—119 reads:

" 'Person subject to involuntary admission' or 'subject to involuntary admission' means:

(1) A person who is mentally ill and who because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future; or

(2) A person who is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm. ° ° °" Ill. Rev. Stat. 1979, ch. 91½, par. 1—119.

his current hospitalization, except to say that he wanted methadone. However, respondent had talked to Dr. Deeb during his previous, voluntary hospitalization. Dr. Deeb thus formed an evaluation of respondent based on the following: personal observation, the progress notes written by staff on respondent's chart, information gathered by a staff member who talked to respondent's family, and the conversations with respondent during his previous hospitalization.

Dr. Deeb's evaluation was that respondent could take care of himself, was not subject to mental depression, was not psychotic, but was a drug abuser. Respondent was addicted to methadone, a synthetic heroin substitute, and used a drug named Placidyl for its euphoriant effect. The combination of these drugs was harmful and could be lethal. The doctor predicted that there was a 100-percent probability that respondent would continue his pattern of drug abuse if released, and that it was probable he would give himself a lethal dose or cause serious harm to himself.

Finally, Dr. Deeb testified that drug abuse was recognized as a mental illness by the psychiatric profession. He based this opinion on the categorization of drug abuse in the Diagnostic and Statistical Manual of Mental Disorders (both 2d ed. 1968 and 3d ed. 1980), published by the American Psychiatric Association (hereinafter DSM-II and DSM-III).

Respondent did not present any evidence. The trial court entered a finding that respondent was not a person subject to involuntary admission and should be discharged. The court found that, although respondent was clearly dangerous to himself in that he could take a lethal combination of drugs, the term "mental illness" in the MHDD Code was not intended to include those persons who use drugs.

I

Initially, we deal with respondent's contention that this appeal is moot because even if this court finds that he was subject to involuntary admission at the time of the circuit court hearing on August 29, 1980, it would not necessarily follow that he is currently subject to involuntary admission. Section 1—119(1) of the MHDD Code refers to a person "* * * who because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the *near future*; * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 91½, par. 1—119.) Even if this court reversed the circuit court, it would be necessary to remand for a determination of respondent's present condition.

■■ Under the traditional mootness principle, this appeal would be moot. The courts, however, have traditionally applied an exception to the mootness doctrine in mental health cases. (*In re Garcia* (1978), 59 Ill. App. 3d 500, 502—03, 375 N.E.2d 557.) The mootness doctrine should not be applied where it would prevent issues capable of repetition from ever

being susceptible to appellate review. If respondent's position prevailed, appellate review could never be obtained in mental health commitment cases. Thus, there would be no development of a body of case law to provide guidance to the circuit court. Appellate review will aid in considering the MHDD Code. See also *In re Phillips* (1978), 62 Ill. App. 3d 408, 410-11, 379 N.E.2d 97; *In re Fields* (1978), 60 Ill. App. 3d 869, 871-72, 377 N.E.2d 301.

## II

To sustain its burden in this involuntary admission proceeding, the State must show that respondent is mentally ill, and that he is reasonably expected to inflict serious physical harm upon himself or another in the near future. (Ill. Rev. Stat. 1979, ch. 91½, par. 1—119(1).) The standard of proof is clear and convincing evidence. (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 325-26, 309 N.E.2d 733, now codified at Ill. Rev. Stat. 1979, ch. 91½, par. 3—808.) The State contends that respondent's drug abuse constitutes a "mental illness" within section 1—119, and that he could be reasonably expected to harm himself in the near future. The trial court, although finding respondent dangerous to himself, held that voluntary drug abuse is not a mental illness.

The issue of whether drug abuse constitutes a "mental illness" under section 1—119 of the MHDD Code appears to be a question of first impression. The term "mental illness," which replaces the term "mental disorder" in the old Code, is deliberately not defined in the new Code. The drafters stated:

"That term is left undefined as in prior codes, largely because any definition which could be made legally explicit would necessarily be so broad or circular as to preclude accurate application. By not providing an explicit statutory definition, a common-law definition fashioned by the courts on a case-by-case basis is deemed to be preferable as it has been in the past." Governor's Commission For Revision of the Mental Health Code of Illinois, Report 14 (1976).

The State cites cases in which drug or alcohol abuse was a contributing factor to a finding of involuntary admission. The State concedes, however, that in each of these cases, an existing condition of mental illness was aggravated by drug or alcohol abuse. In *In re Evans* (1980), 86 Ill. App. 3d 263, 408 N.E.2d 33, a finding of involuntary admission was sustained when respondent had been diagnosed as a schizophrenic and also mixed alcohol and phenobarbital. Similar results were reached in *People v. Gerich* (1974), 22 Ill. App. 3d 575, 317 N.E.2d 724, and *In re Spain* (1977), 54 Ill. App. 3d 26, 369 N.E.2d 305. No cases have been found in which a finding of involuntary admission was based solely on drug abuse.

The State places heavy reliance on the classification of drug dependence as a mental illness by DSM-II and DSM-III. Dr. Deeb testified at the hearing to this classification, and the State relies heavily on the classification in its briefs. Dr. Deeb also testified at the hearing that respondent was not psychotic.

Reliance on DSM-II and DSM-III misapprehends the nature of these publications. The various editions of DSM are simply outlines of diagnostic categories. Their purpose is to attempt to achieve a uniform nomenclature in psychiatry to facilitate statistic-gathering and information exchange. In addition to drug abuse, the following are classified as mental disorders in various editions of DSM: sexual deviations, including homosexuality, fetishism, pedophilia, voyeurism, sadism; alcoholism, including episodic excessive drinking and habitual excessive drinking; speech disturbance; sleep disorders; social maladjustments, including marital maladjustment, social maladjustment and occupational maladjustment; transient situational disturbance, including adjustment reaction of infancy, adjustment reaction of childhood, adjustment reaction of adolescence, adjustment reaction of adult life and adjustment reaction of late life.

■■ The State has failed to sustain its burden of proof in this case. That burden was described in *People v. Sansone* (1974), 18 Ill. App. 3d 315, 326: (1) the facts upon which the medical opinion (of mental illness) is based must be established by clear and convincing evidence; and (2) the medical opinion, itself, must be clear and convincing.

■■ The medical evidence in this case is insufficient. The only evidence that drug abuse is a mental illness is the classification of DSM-II and DSM-III and Dr. Deeb's brief statement of his opinion that drug abuse is recognized as a mental illness by the psychiatric profession. Dr. Deeb's opinion appears to be based on the inclusion of drug abuse in the various editions of DSM. Considering the other conditions that are classified as mental disorders by DSM, this evidence is patently insufficient. Respondent's attorney characterized the issue as an epistemological problem, and that respondent's problem is physiological, not psychological. This court is being called upon to make a judgment as to whether drug dependence constitutes a mental illness on the basis of a record that barely addresses the medical issue. "Clear and convincing evidence" is a constitutional standard in involuntary commitment cases (*Addington v. Texas* (1979), 441 U.S. 418, 431-33, 60 L. Ed. 2d 323, 334-35, 99 S. Ct. 1804, 1812-13; *In re Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273), and that burden was not met in the instant case.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.