THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. MARVIN READ, Respondent-Appellant.

Fifth District   No. 5—90—0650

Opinion filed May 7, 1992.—Rehearing denied June 16, 1992.

GOLDENHERSH, P.J., dissenting.

Penelope S. Karnes and Jeff Plesko, both of Guardianship & Advocacy Commission, of Carbondale, for appellant.

H. Wesley Wilkins, State's Attorney, of Jonesboro (Kenneth R. Boyle, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Marvin Read appeals from the decision of the trial court ordering his admission to a facility for the developmentally disabled.

Marvin Read was admitted to Choate Mental Health and Developmental Center (Choate Center) on August 24, 1990, pursuant to a peti-

tion for judicial admission. (Ill. Rev. Stat. 1989, ch. 91½, par. 4—400 *et seq.*) The petition, cause No. 89—MH—135, alleged that Read was reasonably expected to inflict serious physical harm upon himself or others in the near future. On August 30, 1990, the circuit court dismissed this petition because Read had not been examined by a clinical psychologist or physician within 24 hours pending admission as required by section 4—402 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91½, par. 4—402). On that same day a second petition for judicial admission was executed against Read by Kent Price. It was filed with the court on August 31, 1990. A hearing on the second petition, cause No. 90—MH—224, was held on September 6, 1990.

At the hearing Read's attorney informed the court that following the court's order dismissing cause No. 89—MH—135, Read had not been discharged from Choate Center. He asked the court to order Read discharged and to dismiss cause No. 90—MH—224. The record contains a "Notice of Change in Status" filed August 31, 1990, indicating that on August 30, 1990, Read was discharged and released to himself. The State argued that Read was in fact discharged on August 30, but that he did not physically leave the facility because the second petition for judicial admission had been filed. The State asserted that upon execution of the second petition Read was subject to emergency admission (Ill. Rev. Stat. 1989, ch. 91½, par. 4—401) notwithstanding the fact that he had never physically left the Choate Center.

The circuit court denied Read's motion to dismiss the second petition. The hearing proceeded, and after the testimony of Dr. Donaldson, the circuit court found that the State had established by clear and convincing evidence that Read was subject to judicial admission and ordered him to remain at Choate Center. Read appeals.

Read argues that because he was not physically released from the Choate Center after cause No. 89—MH—135 was dismissed, the court's order for judicial admission in cause No. 90—MH—224 is void. Read directs our attention to the recent case of *People v. Valentine* (1990), 201 Ill. App. 3d 10, 558 N.E.2d 807, which involved a respondent, Georgia Valentine, who was involuntarily admitted to a mental health facility. Valentine had not been examined by a psychiatrist within 24 hours of her admission as required by the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—610), but the trial court refused to dismiss the petition for involuntary admission. The appellate court reversed the trial court and ruled that "[a]ny noncompliance with the statutory [*sic*] prescribed involuntary commitment procedures renders the judgment entered in such a cause erroneous and of no effect." 201 Ill. App. 3d at 13-14, 558 N.E.2d at 810.

Read contends that if the failure to release a respondent pursuant to a statutorily mandated release provision deprives the trial court of jurisdiction (*Valentine*, 201 Ill. App. 3d 10, 558 N.E.2d 807), surely the failure to release Read pursuant to another statutorily mandated release provision deprived Choate Center of the authority to detain Read in order to execute a second petition and certificate. Read is correct in arguing that Choate Center was without authority to detain him under the first petition for admission. There is no dispute that the trial court proceeded properly in dismissing cause No. 89—MH—135. The trial court's dismissal of the first petition in the instant case is consistent with *Valentine*. Unlike *Valentine*, however, in the case at bar a second petition was filed after it was discovered that the proceeding on the initial petition for commitment was invalid.

Read argues that the trial court was without jurisdiction to act on the second petition where the mandate of the initial petition was not carried out. He cites the definition of "discharge" as provided in the Mental Health and Developmental Disabilities Code:

> " 'Discharge' means the full release of any person admitted or otherwise detained under this Act from treatment, habilitation, or care and custody." (Ill. Rev. Stat. 1989, ch. 91½, par. 1—109.)

No other statutory authority is cited in support of his argument that the trial court lacked jurisdiction to proceed on the second petition where, after Read's "release to himself," he did not physically leave Choate Center.

There is nothing in the record to indicate that there was a time lag between Choate Center's receipt of the discharge order and the execution of the second petition. The State contends that with the second petition executed, requiring the State to see that Read physically left the facility would serve no purpose because defendant would have been immediately readmitted. The State cites *In re Splett* (1991), 143 Ill. 2d 225, 572 N.E.2d 883, in support of its position. Richard Splett was involuntarily admitted to a mental health facility. The appellate court reversed his involuntary admission order because the record failed to show that he had received formal notice of the proceedings. The supreme court affirmed the appellate court's judgment on the ground that Splett was not eligible for involuntary admission under the Code, but it specifically rejected the appellate court's finding that absent formal proof of notice of the commitment proceedings an involuntary admission order must be declared invalid. The court held that "proof of formal notice of the proceeding may be excused when circumstances demonstrate that actual notice is sufficient." *Splett*, 143 Ill. 2d at 236, 572 N.E.2d at 888.

■ In this case the actual physical release of Read from the facility was not necessary in order to comply with the statutory definition of a "discharge." The "Notice of Change in Status" indicates that Read was in fact discharged and released, albeit to himself, on August 30, 1990, the same day the court ordered it. There is nothing in the record to indicate the exact time of day that the petition in cause No. 90—MH—224 was filed. Furthermore, there is nothing in the record showing that Read tried to leave the facility or that he wanted to leave or that he was prevented from leaving. Under the circumstances herein we do not find that the failure to physically release Read from Choate Center precluded the State from subsequently filing an involuntary commitment petition. Based on the facts of this case, requiring Read to physically leave Choate Center before filing the second petition would require that we construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved. See *Splett*, 143 Ill. 2d at 232, 572 N.E.2d at 886.

The facts in this case are similar to those in *In re Shaw* (1987), 153 Ill. App. 3d 939, 506 N.E.2d 456. In that case a petition for involuntary admission was dismissed for failure to comply with the five-day time limit found in section 3—403 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—403), and the respondent was ordered discharged. The respondent, however, was not discharged and a second petition was filed. The appellate court noted that the record was unclear as to whether the second petition was filed the same day respondent was ordered discharged or the following day. At a hearing on the second petition, the court found the allegations had been proved by clear and convincing evidence and found the respondent subject to involuntary admission. On appeal, the respondent argued that he was entitled to immediate discharge despite the fact that the second petition was proper in all respects. He further argued that any proceedings after the court's order dismissing the first petition were void and without effect. In affirming, the appellate court stated:

> "[T]he mere failure to discharge, whether or not occasioned by the mental health facility's own omission in failing to follow through on a court order, does not necessarily insulate the respondent from subsequent, otherwise-valid involuntary proceedings. In sum, respondent may be possessed of other legal avenues for redress of a wrong, but this is presently not the appropriate forum to decide such matters." *Shaw*, 153 Ill. App. 3d at 945, 506 N.E.2d at 460.

Read argues that *Shaw* was wrongly decided. We disagree. Read contends that in accordance with the holding of *In re Smith* (1986), 145

Ill. App. 3d 1002, 496 N.E.2d 497, it is mandatory that he be discharged. Smith, a patient at a mental health facility, appealed from two orders, the first of which changed her status from a voluntary to an involuntary patient and the second of which required her continued hospitalization. The appellate court held that the petition for continued hospitalization, which was filed one week after the period of initial involuntary hospitalization expired, was not timely; thus, the order requiring her continued hospitalization was invalid.

The facts in *Smith* are dissimilar to those in the instant case; in the case at bar, there is no allegation that the second petition was untimely filed. The order rendering Read a subject of judicial admission at Choate Center is based on a timely filed petition. Read in fact does not contest the validity of the second petition except with regard to the court's alleged lack of authority to act on the petition. Finally, in *Smith*, although the court recognized that the respondent was entitled to be discharged, the court pointed out that the respondent could be subject to further restriction at the facility in the event appropriate involuntary admission proceedings were commenced.

As in *Smith*, the trial court in the case at bar properly ordered Read discharged once it was determined that the statutory requirements for judicial admission had not been complied with. The subsequent filing of a valid petition for judicial admission was not precluded because of the disposition of the first petition. We conclude that there is nothing in the Mental Health and Developmental Disabilities Code which indicates that the relief Read requests is available. "We cannot inject remedies not found in the statute." (*In re Williams* (1987), 151 Ill. App. 3d 911, 918, 503 N.E.2d 816, 821.) The failure of Choate Center to physically discharge Read does not mean that the subsequent petition is void or ineffective, and the circuit court's order in cause No. 90—MH—224 finding the respondent subject to judicial admission was properly entered.

Affirmed.

RARICK, J., concurs.

PRESIDING JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.

My colleagues conclude that under the facts of this case an actual physical release of defendant was not necessary to effect a "discharge" since, according to the appropriate documents, defendant was dis-

charged on paper. As authority, *In re Splett* (1991), 143 Ill. 2d 225, 572 N.E.2d 883, is cited.

*Splett,* however, is based on a contrary set of facts. In *Splett,* the supreme court found the failure to give Splett the required statutory notice was harmless since the record showed that Splett had actual notice of the proceedings. The supreme court concluded the legislative intent in fact had been achieved. In the case at bar, however, defendant was given the appropriate document of discharge, yet not discharged in fact; the opposite of the legislative intent resulted in this case. My colleagues note there is nothing in the record indicating defendant tried to leave the facility, wanted to leave, or was prevented from leaving the Choate Center. What this void in the record indicates is that, in reality, there was no discharge, merely an on-paper discharge. Such is not the legislative intent.

While this position might seem hypertechnical, the rationale for strict compliance was eloquently stated by this court in *People v. Valentine* (1990), 201 Ill. App. 3d 10, 558 N.E.2d 807, in its discussion of the statutory requirement that an involuntarily committed patient be examined within 24 hours:

> "The legislature has created a bright line. The State has 24 hours. No doubt, the bright line was created as a prophylactic against deciding these kinds of cases on an *ad hoc* basis. When we recall that other governments have used involuntary commitment to a mental hospital as a ruse, as a device to silence critics, we feel that this bright line is but one brick in a wall against the evils of tyranny that we, in this country, have erected. One brief glance toward the recent history of Eastern Europe is persuasive of the wisdom of that wall, the wisdom of this rule.
>
> Any noncompliance with the statutory prescribed involuntary commitment procedures renders the judgment entered in such a cause erroneous and of no effect." 201 Ill. App. 3d at 13-14, 558 N.E.2d at 809-10.

Such should be the result in this case.