*In re* NANCY A., Alleged to Be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Nancy A., Respondent-Appellant).

Fifth District   No. 5—02—0463

Opinion filed August 5, 2003.

Jeff M. Plesko, Elvis C. Cameron, and Anthony E. Rothert, all of Guardianship and Advocacy Commission, of Alton, for appellant.

Bill Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The respondent, Nancy A., appeals from an order of the circuit court of Madison County that found her to be a person subject to involuntary admission pursuant to a petition under the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1—100 *et seq.* (West 2000)) and committed her to the Alton Mental Health Center (Alton). The respondent contends that certain procedural defects require a reversal of the trial court's order, including (1) the State's failure to provide notice to the respondent of the involuntary commitment proceedings within 12 hours of her admission as required by section 3—609 of the Code (405 ILCS 5/3—609 (West 2000)) and (2) the State's failure to file the petition and paperwork within 24 hours of the respondent's admission to Alton as required by section 3—611 of the Code (405 ILCS 5/3—611 (West 2000)). The respondent also raises the issue of whether the petition for involuntary admission should have been barred under the doctrine of *res judicata.* These

contentions present disputed questions of law that we review *de novo*. See *In re Jones*, 318 Ill. App. 3d 1023, 1025, 743 N.E.2d 1090, 1092 (2001). Because we conclude that the State's noncompliance with the statutorily prescribed involuntary commitment procedures renders the circuit court's judgment erroneous, we reverse.

## FACTS

On April 12, 2002, a petition seeking the involuntary admission of the respondent pursuant to section 3—600 of the Code (405 ILCS 5/3—600 (West 2000)) was apparently filed in Madison County and docketed as cause No. 02—MH—32. This petition alleged that the respondent had been admitted to Alton on April 8, 2002, at 1:40 p.m. The record on appeal does not contain this first petition; however, it does contain a motion to dismiss the first petition. The motion to dismiss was filed by the respondent on April 16, 2002. In that motion to dismiss, the respondent claimed that the April 12, 2002, petition should be dismissed because it had not been served within the time limits contained in the Code, being served on the respondent 11 hours too late and being filed with the court 34 hours too late. See 405 ILCS 5/3—609, 3—611 (West 2000). On April 18, 2002, the respondent's motion to dismiss was called for a hearing before the trial court. There is no transcript of that hearing in the record on appeal. The record does contain an order dated April 18, 2002, signed by the trial judge dismissing the April 12, 2002, petition for involuntary admission in cause No. 02—MH—32. The State did not file an appeal from this order.

After the first petition was dismissed, the respondent was not discharged nor did she remain voluntarily at Alton. Instead, she was named in a new emergency petition that was prepared and filed the same day that the first petition was dismissed. This April 18, 2002, petition also sought the involuntary admission of the respondent pursuant to section 3—600 of the Code (405 ILCS 5/3—600 (West 2000)) and was docketed as cause No. 02—MH—37. It is this second petition that is the subject of this appeal. On April 19, 2002, the day following the filing of the second petition, the State's Attorney filed a motion to continue. This motion advised the court that the respondent had been admitted to Alton on April 18, 2002, rather than April 8, 2002. On April 23, 2002, the circuit court allowed the State's motion to continue the case to April 25, 2002.

On April 25, 2002, the respondent filed a motion to dismiss the second petition. Prior to hearing evidence on the petition, the court heard the respondent's motion to dismiss the petition based on the State's failure to file the petition within 24 hours of the respondent's entry to the mental health facility. After argument, the motion to

dismiss the second petition for involuntary admission was denied. The matter then proceeded to an immediate hearing on the petition for involuntary admission. The respondent refused to attend the hearing, and her attorney waived her presence. The only witness to testify was Dr. Daolong Zhang, a psychiatrist at Alton. He testified that the respondent suffered from schizophrenia accompanied by paranoia and delusions. Dr. Zhang testified that when the respondent came to Alton, she was dirty, disheveled, and homeless. She erroneously believed that she could return to an apartment from which she had been evicted for the nonpayment of rent. She also had the delusional belief that she owned the apartment. Dr. Zhang testified that the respondent suffered from hypertension and refused to take any medication for her mental or physical condition. He testified that her mental condition caused her to be violent and aggressive and that on April 8, 2002, the respondent had threatened violence against various staff members at Alton. In Dr. Zhang's opinion the respondent was dangerous to herself and others. At the conclusion of the hearing, the trial judge found the respondent subject to involuntary admission and ordered her hospitalized in the Department of Human Services. On May 6, 2002, the respondent filed a motion to reconsider.

On May 2, 2002, the State filed a petition naming the respondent for the involuntary administration of psychotropic medication pursuant to section 2—107.1 of the Code (405 ILCS 5/2—107.1 (West 2000)). This petition was set for a hearing on May 9, 2002. On May 8, 2002, the State moved to continue the hearing. The trial court continued the hearing on the petition for involuntary admission of psychotropic medication, as well as the hearing on the respondent's motion to reconsider the involuntary admission order, to May 16, 2002. The May 16, 2002, proceedings were conducted before a different judge, and as a result the respondent's motion to reconsider was not considered until June 27, 2002, at which point it was denied. The respondent thereafter filed a timely notice of appeal on July 12, 2002. The Illinois Guardianship and Advocacy Commission was appointed to represent the respondent on appeal.

## ANALYSIS

■ Before we address the respondent's claims, we must first consider whether this appeal is moot. The State argues that an appeal from an involuntary commitment order may be dismissed as moot when a respondent who has been previously committed on an involuntary basis subsequently applies for voluntary admission. As authority for this argument, the State cites *In re Wathan*, 104 Ill. App. 3d 64, 432 N.E.2d 670 (1982).

Generally, the mootness doctrine does not apply to mental health cases. *In re Barbara H.*, 183 Ill. 2d 482, 702 N.E.2d 555 (1998); *In re Garcia*, 59 Ill. App. 3d 500, 375 N.E.2d 557 (1978). However, in *In re Wathan* the appellate court held that the mootness doctrine should be applied. In that case the respondent was found to be subject to involuntary admission and was ordered hospitalized. Two months later a second petition for involuntary admission was filed. After a hearing, the respondent was again found to be subject to involuntary admission and was again ordered hospitalized. It was from the second order of involuntary admission that the respondent appealed. The appellate court found the mootness doctrine applicable. The court reasoned that since the first commitment had not been appealed, there could be no collateral consequences emanating from the respondent's second involuntary admission. *In re Wathan*, 104 Ill. App. 3d at 66, 432 N.E.2d at 672; *In re Meek*, 131 Ill. App. 3d 742, 476 N.E.2d 65 (1985).

In the instant case, the record suggests that the respondent had been admitted five times prior to the admission now being contested. Under *In re Wathan*, if those prior admissions had been involuntary, the mootness doctrine might apply. Under *In re Meek*, if those prior admissions had been voluntary, the mootness doctrine would not apply. The record in this case does not indicate whether the prior admissions were voluntary or involuntary. In any event, we will not dismiss this appeal as moot. When reviewing mental health cases, courts have traditionally applied an exception to the mootness doctrine. *In re Marquardt*, 100 Ill. App. 3d 741, 743, 427 N.E.2d 411, 413 (1981). This is because reviewing such orders allows a body of case law to develop that can provide guidance to the circuit court when it is faced with similar or identical issues. *In re Marquardt*, 100 Ill. App. 3d at 744, 427 N.E.2d at 413. The exception to the mootness doctrine has been applied where the challenged action is in its duration too short to be fully litigated prior to its cessation and where there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re Barbara H.*, 183 Ill. 2d at 491, 702 N.E.2d at 559. Both of these factors are present in the instant case. Because the challenged order has already expired and there is a reasonable expectation that the respondent will be subjected to the same action again, we shall apply the exception to the mootness doctrine. See *In re Barbara H.*, 183 Ill. 2d at 491, 702 N.E.2d at 559. Although the State contends that this case is different because the respondent signed a voluntary admission form subsequent to the involuntary commitment order at issue in this appeal, suffice it to say that we shall address the issues raised by the respondent on appeal.

■ We turn now to the respondent's contentions on appeal. The respondent initially contends that the trial court should have dismissed the current petition on the basis of *res judicata*. See 134 Ill. 2d R. 273; *DeLuna v. Treister*, 185 Ill. 2d 565, 573, 708 N.E.2d 340, 344 (1999). The State responds that there had been no adjudication on the merits of the previous petition and that there is no identity of causes of action for the petitions. See *People v. Valentine*, 201 Ill. App. 3d 10, 12, 558 N.E.2d 807, 809 (1990). Although the record is not clear, we find that the dismissal of the first petition in this case was without prejudice. Accordingly, further discussion of this issue is not necessary. See *Forest Preserve District v. Vanderlaan*, 226 Ill. App. 3d 692, 695, 589 N.E.2d 599, 601 (1992); *Norris v. Estate of Norris*, 143 Ill. App. 3d 741, 748, 493 N.E.2d 121, 126 (1986). From the confusing state of the record it appears that at the same time the court dismissed the first petition, it was entertaining a new petition for involuntary admission filed in the same proceeding in which the prior petition had been dismissed.

■ This does not mean that the petition for involuntary admission filed in this case was valid. The respondent argues that the circuit court's order granting the petition for involuntary admission must be reversed because the State failed to comply with the notice and filing requirements set forth in section 3—611 of the Code (405 ILCS 5/3—611 (West 2000)). Section 3—611 provides as follows:

> "*Within 24 hours*, excluding Saturdays, Sundays[,] and holidays, *after the respondent's admission* under this [a]rticle, the facility director of the facility *shall file* 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent *with the court* in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court." (Emphasis added.) 405 ILCS 5/3—611 (West 2000).

The failure to timely file the petition is an error that cannot be waived or considered harmless. *In re Demir*, 322 Ill. App. 3d 989, 994, 751 N.E.2d 616, 620 (2001); *In re Stone*, 249 Ill. App. 3d 861, 865-66, 619 N.E.2d 1345, 1347-48 (1993). Section 3—611 of the Code creates a bright-line test with which the facility director must strictly comply. *Sassali v. DeFauw*, 297 Ill. App. 3d 50, 53, 696 N.E.2d 1217, 1219 (1998). This section requires that the petition must be filed and notice must be given to a detainee within 24 hours of an admission for any petition filed under article VI of the Code (405 ILCS 5/3—600 through 3—611 (West 2000)). A failure to comply with the notice and filing requirements justifies a dismissal of a petition. *In re Demir*, 322 Ill. App. 3d 989, 994, 751 N.E.2d 616, 620 (2001).

The State contends that when the first petition in this case was dismissed for procedural reasons, the statutory time limits set forth in section 3—611 of the Code (405 ILCS 5/3—611 (West 2000)) for notice, filing, and service of a subsequent petition did not begin to run until the previous petition was dismissed. In other words the State maintains that a new clock for purposes of section 3—611 began to run when the first petition was dismissed and the second petition was filed. Continuing, the State concludes this holds true even though the respondent was never discharged in this case, inferring that the respondent's date and time of admission changed after the first petition was dismissed. The respondent maintains that she was never discharged and that therefore the time and date of her admission (April 8, 2002) remained unchanged. Since she was not discharged after the dismissal of the first petition, the respondent contends that the time during which the State could comply with sections 3—609 and 3—611 of the Code also remained unchanged and that the time did not start over.

To support its position, the State relies primarily upon three opinions, *In re Shaw*, 153 Ill. App. 3d 939, 506 N.E.2d 456 (1987), *In re Clark*, 220 Ill. App. 3d 1024, 581 N.E.2d 408 (1991), and *People v. Read*, 228 Ill. App. 3d 664, 592 N.E.2d 1178 (1992) (Goldenhersh, P.J., dissenting). In *Read*, an initial petition for involuntary admission was dismissed because the respondent had not been examined within 24 hours of the admission. A second petition was executed the same day as the order of dismissal and filed the next day. The respondent was involuntarily admitted on the second petition. On appeal, the respondent argued that the order of involuntary admission was void because he had not been physically released from the facility after the first petition. Rejecting the respondent's claim, the court described the factual basis for the ruling as follows:

"In this case the actual physical release of Read from the facility was not necessary in order to comply with the statutory definition of a 'discharge.' The 'Notice of Change in Status' indicates that Read was in fact discharged and released, albeit to himself, on August 30, 1990, the same day the court ordered it. There is nothing in the record to indicate the exact time of day that the petition in cause No. 90—MH—224 was filed. Furthermore, there is nothing in the record showing that Read tried to leave the facility or that he wanted to leave or that he was prevented from leaving. Under the circumstances herein[,] we do not find that the failure to physically release Read from Choate Center precluded the State from subsequently filing an involuntary commitment petition. Based on the facts of this case, requiring Read to physically leave

Choate Center before filing the second petition would require that we construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved." *Read*, 228 Ill. App. 3d at 667, 592 N.E.2d at 1180.

The majority in *Read* relied upon *In re Shaw*. In *In re Shaw*, a mental patient who had initially been admitted voluntarily sought his discharge. The mental health facility failed to file a petition for involuntary commitment within the five-day period after a patient request for discharge pursuant to section 3—403 of the Code (Ill. Rev. Stat. 1985, ch. 91½, par. 3—403 (now see 405 ILCS 5/3—403 (West 2000))). The facility refused to discharge the respondent and immediately filed a second petition for involuntary commitment. The circuit court granted the second petition and the respondent appealed. On appeal, the court initially noted that the respondent was entitled to a discharge at the expiration of the five-day period and that, at that time, his status was no longer that of a voluntarily admitted patient. The court also pointed out that a patient armed with a statutory right to a discharge should not be required to submit further requests in order to obtain his release. The court concluded, however, that this did not bar the subsequent petition in that case. The court stated that the original petition had been filed under section 3—403 of article IV of the Code. The second petition was brought under article VII of the Code (Ill. Rev. Stat. 1985, ch. 91½, pars. 3—700 through 3—706 (now see 405 ILCS 5/3—700 through 3—706 (West 2000))). *In re Shaw*, 153 Ill. App. 3d at 943, 506 N.E.2d at 459. The court held that the subsequent petition was not barred. The court stated that a dismissal because of a violation of an article of the Code does not prevent the refiling of an otherwise valid petition under a different article of the Code. *In re Shaw*, 153 Ill. App. 3d at 944, 506 N.E.2d at 459, citing *In re Shirley*, 154 Ill. App. 3d 850, 853, 507 N.E.2d 503, 505 (1987). The court concluded that the failure of the facility to discharge the respondent pursuant to section 3—403 did not necessarily insulate the respondent from otherwise valid involuntary proceedings but that it did leave the facility open to possible civil action. *In re Shaw*, 153 Ill. App. 3d at 945, 506 N.E.2d at 460.

In *In re Clark*, the State bungled efforts to involuntarily admit the respondent, who had initially been admitted voluntarily following his release from the Illinois Department of Corrections, where he had served 7½ years' imprisonment for voluntary manslaughter. After his voluntary admission to a mental health facility, the respondent requested a discharge under section 3—403 of the Code, which provides that such a request and the release may be stayed if a petition and two certificates conforming to the requirement of sections

3—601(b) and 3—602 of the Code (405 ILCS 5/3—601(b), 3—602 (West 2000)) are filed. The State filed three separate petitions seeking the involuntary admission of the respondent. The first petition was accompanied by only one certificate, not two as required by section 3—403 of the Code. The respondent filed a motion to dismiss, pointing out that the second certificate required by section 3—403 had not been timely filed. The trial court granted the motion to dismiss but entered an order for the temporary detention and examination of the respondent pursuant to section 3—607 of the Code (405 ILCS 5/3—607 (West 2000)). The State filed a new petition the same date but again only attached one certificate. Before the respondent appeared in court on this second petition, the State filed yet another petition. This third petition, filed pursuant to section 3—701 of the Code (405 ILCS 5/3—701 (West 2000)), was correct in form and was accompanied by two certificates. In affirming the trial court's denial of the respondent's motion to dismiss the second petition, the court in *In re Clark* held that it would serve no purpose to order the respondent released because he had not been examined within 24 hours by another psychiatrist, given the fact that the third petition, properly supported by two certificates, was filed the day before the respondent appeared in court to complain about the inadequate second petition. *In re Clark*, 220 Ill. App. 3d at 1028, 581 N.E.2d at 411.

We find that *Read, In re Shaw,* and *In re Clark* are each distinguishable from the instant case. In contrast to the case at bar, the majority in *Read* based its analysis and decision on a finding that Read had actually been discharged, even though he had not physically left the mental health facility. *Read* did not suggest that a discharge was not necessary before a new petition could be filed. Rather, *Read* was concerned with what constituted a discharge. In this case, there is no question that the respondent was never discharged. To the extent that *Read* is relevant to this case, it supports the respondent's contention that April 8, 2002, is the date of her admission pursuant to the second petition filed in this case, because there was no intervening discharge.

*In re Shaw* is also distinguishable from the case at bar. The decision in *In re Shaw* is premised on the fact that the subsequent petition was brought under a different article of the Code. In this case, each of the petitions was brought under the same article (405 ILCS 5/3—600 through 3—611 (West 2000)). In fact, the authority relied upon by *In re Shaw* notes the solidarity of article VI of the Code. *In re Shirley*, 154 Ill. App. 3d at 853, 507 N.E.2d at 505. The decision in *In re Shaw* is based on the contention that each article of the Code is unitary and provides its own procedural guidelines for petitions under

that article. Thus, *In re Shaw* actually supports the respondent's position in this case.

Similarly, *In re Clark* also fails to support the State's assertion that the statutory time limits set forth in section 3—611 of the Code (405 ILCS 5/3—611 (West 2000)) begin anew after the dismissal of a petition brought under the Code. The court in *In re Clark* did not address this issue because it had not been raised. The distinguishing fact in *In re Clark* was that the third petition, which properly complied with the Code, had been filed before the invalidity of the second petition was brought to the attention of the court and the second petition was dismissed. In our case, the new, subsequent petition was not filed by the State until after its first petition had been dismissed. Unlike counsel in the instant case, counsel in *In re Clark* did not argue that the respondent's date and time of admission remained unchanged despite the three successive petitions filed by the State. To the contrary, counsel for the respondent in *In re Clark* at one point even attempted to waive the late filing of the second certificate required by section 3—403 of the Code. *In re Clark*, 220 Ill. App. 3d at 1027, 581 N.E.2d at 410.

■ The respondent was involuntarily admitted to Alton on April 8, 2002, at 1:40 p.m. The respondent remained admitted through the date of the filing of the second petition on April 22, 2002. The second petition and the accompanying paperwork were filed, at a minimum, some 240 hours after the respondent's admission to Alton, well after the 24-hour period for filing and notice provided for by the Code (see 405 ILCS 5/3—611 (West 2000)). There is no authority for the contention that a subsequent petition filed under article VI of the Code does not have to fulfill the requirements of section 3—611, which refers to "the respondent's admission under this Article." 405 ILCS 5/3—611 (West 2000). This violation of the notice and filing requirements requires a dismissal of the petition in this case. See *In re Demir*, 322 Ill. App. 3d at 994, 751 N.E.2d at 620; see also *Valentine*, 201 Ill. App. 3d at 13-14, 558 N.E.2d at 809-10. The Code provides a comprehensive set of requirements to be followed by the State to commit an individual involuntarily by certificate. These procedural safeguards are not mere technicalities to be sidestepped. *In re Demir*, 322 Ill. App. 3d at 994, 751 N.E.2d at 619. Rather, they are bright lines created by the legislature to avoid deciding these cases on an *ad hoc* basis and are intended to safeguard the important liberty interests necessarily involved in mental health cases. *In re Demir*, 322 Ill. App. 3d at 995-96, 751 N.E.2d at 621; *In re Luttrell*, 261 Ill. App. 3d 221, 229-30, 633 N.E.2d 74, 80-81 (1994).

Accordingly, we reverse the decision of the circuit court.

Reversed.

CHAPMAN and DONOVAN, JJ., concur.