No. 2--07--0781     Filed:  10-2-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re ANDREW B., Alleged to be a Person Subject to Involuntary Admission | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Winnebago County.<br><br>No. 07--MH--526<br><br>Honorable |
| (The People of the State of Illinois, Petitioner-Appellee, v. Andrew B., Respondent-Appellant). | | John H. Young, Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Andrew B., appeals from the trial court's ruling that he be involuntarily admitted to the Department of Mental Health pursuant to section 3--600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3--600 (West 2006)).  Respondent argues that the trial court's order should be reversed because the petition to involuntarily admit him was untimely filed.  We affirm the trial court's decision.

Respondent was voluntarily admitted to Singer Mental Heath Center on March 26, 2007.  On May 7, 2007, respondent requested to leave Singer, and a petition seeking respondent's involuntary admission pursuant to sections 3--403 and 3--404 of the Code (405 ILCS 5/3--403, 3--404 (West 2006)) was prepared and filed with the court the following day.  On June 12, 2007, on the State's motion, the petition was dismissed without prejudice, and the court ordered that respondent be discharged from Singer.  That same day, another petition, seeking emergency admission by certificate pursuant to section 3--600 of the Code, was prepared, and it was filed the next day.  This

petition was dismissed on the State's motion on June 19, 2007, and, again, the trial court ordered that respondent be discharged.

A third petition, which sought emergency admission by certificate pursuant to section 3--600 of the Code, was prepared on June 19, 2007, and filed the following day. This third petition, the petition at issue in this appeal, averred that respondent had been discharged by the court but continued to be delusional and unable to care for himself. Respondent moved to dismiss the petition on the basis that he had not been released on June 19, 2007, despite being discharged by the court. The court denied the motion on the ground that "the failure to discharge [respondent], if there was, in fact, a failure, and it's not clear that there was," did not insulate respondent from subsequent valid admission proceedings. The matter then proceeded to a hearing, the petition was granted, and respondent was found to be subject to involuntary admission for 90 days. Respondent timely appeals.

After briefing was completed, the State filed a motion to cite In re Alfred H.H., 379 Ill. App. 3d 1026 (2008), as additional authority on the question of whether this appeal should be dismissed as moot. Respondent objected on the basis that Alfred H.H. was not yet final, because a petition for rehearing was pending at the time. The petition for rehearing has since been denied. We hereby grant the State's motion.

Because the 90-day period of confinement that respondent now appeals has already expired, we begin with the threshold issue of whether the mootness doctrine precludes our review of the merits of his appeal. "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it

impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50 (2006). Where an issue is moot, a reviewing court will generally not consider it on the merits, because "[i]t is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions." J.T., 221 Ill. 2d at 349. However, reviewing courts will consider otherwise moot issues that fall within two widely recognized exceptions to the mootness doctrine: the public-interest exception, which applies in cases that present questions of public importance that will likely recur and whose answers will guide public officers in the performance of their duties; and the exception for cases involving events of short duration that are capable of repetition but evade review. J.T., 221 Ill. 2d at 350.

In Alfred H.H., the Fourth District criticized the appellate court's practice of "routinely" finding exceptions to the mootness doctrine in mental health admission and treatment cases and urged that courts instead conduct meaningful evaluation of the mootness of such appeals on a case-by-case basis. Alfred H.H., 379 Ill. App. 3d at 1028; see, e.g., In re Nancy A., 342 Ill. App. 3d 355, 359 (2003) ("Generally, the mootness doctrine does not apply to mental health cases"). The respondent in Alfred H.H. argued that the evidence was insufficient to warrant his involuntary admission and that his hospitalization was not the least restrictive treatment alternative. In holding that the public-interest exception to the mootness doctrine did not apply, the court concluded that neither issue presented a question of public importance, "[n]or would either answer provide an authoritative determination to guide public officers in the performance of their duties in mental-health cases," because such answers would turn on the particular facts presented in such cases. Alfred H.H., 379 Ill. App. 3d at 1028. Likewise, the court found inapplicable the exception

for cases concerning events of short duration that are capable of repetition but evade review, because the evidence presented in support of any future petitions would differ from the evidence presented in support of the petition at issue. Alfred H.H., 379 Ill. App. 3d at 1029. Lastly, the court concluded that it would no longer recognize the collateral-legal-consequences exception to the mootness doctrine in mental health cases. Alfred H.H., 379 Ill. App. 3d at 1029. Given its restrictive view of the applicability of the mootness doctrine exceptions in mental health cases, the court in Alfred H.H. held the appeal to be moot, and it did not reach the respondent's arguments on their merits.

Alfred H.H. does not control here. Rather, this case is analogous to a more recent Fourth District case, In re A.W., 381 Ill. App. 3d 950 (2008). A.W. raised the issue of the trial court's compliance with the Code. The appellate court addressed the mootness issue as follows:

"Given that (1) strict compliance with statutory procedures is required based on the important liberty interests involved in involuntary-treatment cases (In re Lisa G.C., 373 Ill. App. 3d 586, 590 *** (2007)) and (2) our supreme court has stated that 'the procedures courts must follow to authorize the involuntary medication of mental[-]health patients involve matters of "substantial public concern" ' (In re Robert S., 213 Ill. 2d 30, 46 *** (2004), quoting In re Mary Ann P., 202 Ill. 2d 393, 402 *** (2002)), respondent's arguments regarding the involuntary-treatment order's compliance with the Code constitute questions of public importance. In addition, answers to respondent's arguments will provide an authoritative determination to guide public officers in the performance of their duties in mental-health cases. Finally, the circumstances in this case are likely to recur in other involuntary-treatment cases. Accordingly, we conclude that respondent clearly established

the criteria necessary to satisfy the public-interest exception to the mootness doctrine."
A.W., 381 Ill. App. 3d at 955.

Here, as in A.W., respondent argues that the State failed to strictly comply with the Code. Based on A.W., we conclude that the public-interest mootness exception applies here, and we reach respondent's arguments on their merits.

Respondent argues that, although the trial court twice ordered his discharge (on June 12 and June 19), the facility never actually released him, and thus he was continually confined from May 7 (when he first sought to leave the facility) onward. Because section 3--611 of the Code (405 ILCS 5/3--611 (West 2006)) mandates that a petition be filed within 24 hours of a respondent's admission, respondent contends that the petition at issue here, filed after the June 19 discharge order, came far after the May 7 commencement of his involuntary admission and was therefore invalid.

Respondent's argument mirrors the argument adopted by the Fifth District in Nancy A. There, the respondent had been admitted to a mental health center on April 8, but the petition seeking her involuntary admission was not filed until April 12. Nancy A., 342 Ill. App. 3d at 357. On April 18, the trial court dismissed the April 12 petition (presumably for its untimeliness), but the respondent was not released from the health center before a new petition was filed that same day. Nancy A., 342 Ill. App. 3d at 357. The respondent argued that "she was never discharged and that therefore the time and date of her admission (April 8, 2002) remained unchanged" when a new petition was filed on April 18. Nancy A., 342 Ill. App. 3d at 361. The State countered that "a new clock for purposes of section 3--611 began to run when the first petition was dismissed and the second petition was filed." Nancy A., 342 Ill. App. 3d at 361. The court agreed with the respondent:

"The respondent was involuntarily admitted *** on April 8, 2002 ***. The respondent remained admitted through the date of the filing of the second petition on April 22, 2002 [sic]. The second petition and the accompanying paperwork were filed, at a minimum, some 240 hours after the respondent's admission ***, well after the 24-hour period for filing and notice provided for by the Code ***." Nancy A., 342 Ill. App. 3d at 364.

In reaching its holding, the court in Nancy A. distinguished, among other cases, In re Shaw, 153 Ill. App. 3d 939 (1987). The Fifth District reached the same result in In re Helen S., 342 Ill. App. 3d 330, 335-36 (2003). However, based on the reasoning in Shaw, we disagree with the holdings in Nancy A. and Helen S., and we therefore depart from them.

In Shaw, the respondent requested discharge on July 25 from a voluntary admission. Shaw, 153 Ill. App. 3d at 940. Under such circumstances, the Code mandated that the respondent be released within five days unless a petition for involuntary admission were to be filed within those same five days. See Ill. Rev. Stat. 1985, ch. 91½, par. 3--403; see also 405 ILCS 5/3--403 (West 2006) (same). A petition was filed on August 1, beyond the five-day limit, and, on August 4, the trial court ordered the petition stricken and the respondent discharged. Shaw, 153 Ill. App. 3d at 940. However, the respondent was not discharged, and he signed a second request for discharge on August 4. Shaw, 153 Ill. App. 3d at 940-41. Another petition was filed on either August 4 or August 5. Shaw, 153 Ill. App. 3d at 940-41. At the August 13 hearing on the new petition, the trial court found that the respondent was subject to involuntary admission. Shaw, 153 Ill. App. 3d at 941. On appeal, the respondent argued that the second petition was invalid even if timely under section

No. 2--07--0781

3--403 (i.e., even if filed within five days of his August 4 request for discharge) and that "any proceedings subsequent to the court order of August 4 [were] void and without effect." Shaw, 153 Ill. App. 3d at 941.

The appellate court agreed with the respondent that he should have been discharged five days after his July 25 request, but it nonetheless rejected his argument that the second petition should be given no effect. Shaw, 153 Ill. App. 3d at 943-44. The court reasoned that the second petition initiated a new proceeding, and, so long as that second petition was otherwise valid, any improprieties that preceded it would have no effect on its validity. Shaw, 153 Ill. App. 3d at 944. The court in Shaw concluded as follows:

"The respondent's status ceased being that of a voluntary patient upon expiration of the statutory time frame entitling him to discharge following [his July 25] request. Technically, [the] respondent was no longer a patient at all. A petition for involuntary admission by court order ***, however, could still be properly initiated against the respondent as in any other appropriate case." Shaw, 153 Ill. App. 3d at 945.

We agree with the above statement. Once a petition underlying an involuntary detention has been deemed invalid, a mental health treatment facility can no longer depend on that petition as legal authority to detain a respondent. Thus, when the trial court here ordered respondent discharged upon the dismissal of the June 12 petition, the mental health center could no longer detain him pursuant to that petition. The respondent at that point ceased to be a patient and instead was required to be treated as any other person in the community. Thus, at that point, his admission pursuant to the invalid June 12 petition ended.

-7-

However, the Code provides that a mental health facility may detain a person subject to involuntary commitment for up to 24 hours pending the filing of a petition for involuntary commitment. See 405 ILCS 5/3--604 (West 2006). Thus, if an involuntary patient, just ordered to be released because the petition underlying his detention is invalid, exhibits symptoms that subject him to involuntary admission (see 405 ILCS 5/1--119 (West 2006)), he, just like any other member of the community, may be detained for 24 hours pending the filing of a petition. The validity of this new petition has no relation to the validity of the old petition, nor is it tainted by any impropriety in the respondent's prior detention. A new petition begins a new proceeding, to be judged for validity independent of any prior proceedings. Cf. People v. Read, 228 Ill. App. 3d 664, 668 (1992) (stating, in interpreting another case, that "although the court recognized that the respondent was entitled to be discharged, the court pointed out that the respondent could be subject to further restriction at the facility in the event appropriate involuntary admission proceedings were commenced"). In short, when a court rules that a detention is invalid and orders a patient discharged, the 24-hour clock under section 3--604 of the Code begins anew,[1] and the impropriety of the prior detention has no impact

---

[1] When we say that the clock begins anew when a court rules that a detention is invalid, we do not account for any procedures (paperwork, return of possessions, and the like) that mental health facilities might undergo before a patient is fully discharged. The actual procedures for releasing respondent, and the precise timing of those procedures, are not at issue in this case, and nothing in this decision speaks to the relevance of the timing, duration, and reasonableness of those procedures in the context of a patient who argues his undue detention.

on the propriety of the new detention. A respondent's remedy for the previous improper detention, or for any improper detention after the court orders the respondent discharged, is not immunity from subsequent detention that would otherwise be valid. As the court aptly explained in Shaw:

> "[T]he mere failure to discharge, whether or not occasioned by the mental health facility's own omission in failing to follow through on a court order, does not necessarily insulate the respondent from subsequent, otherwise-valid involuntary proceedings. In sum, [a] respondent may be possessed of other legal avenues for redress of a wrong, but [an appeal of a subsequent, otherwise-valid involuntary proceeding] is presently not the appropriate forum to decide such matters." Shaw, 153 Ill. App. 3d at 945.

The opposite rule would dictate absurd results. Even after a respondent's detention is ruled improper, agents at the mental health facility detaining the respondent may have reason to conclude that the respondent is nevertheless a person subject to involuntary admission who should not be released into the community. Under section 3--604, the health care agents may detain the respondent for 24 hours and initiate new proceedings against him. Respondent here argues that, because he was not physically released between his detentions, the previous detentions invalidate the last. Thus, in a case where a court rules a detention invalid but where the respondent remains a person subject to involuntary admission, respondent would have us impose a requirement that the patient be physically released, presumably just long enough for agents at the mental health facility to restrain him and begin new involuntary admission proceedings. As the court stated in Read, "requiring [a respondent] to physically leave [a mental health facility] before filing the second petition would require that we construe the statute as requiring the performance of an empty formality when the legislative intent

has been otherwise achieved." <u>Read</u>, 228 Ill. App. 3d at 667. Based on our discussion above, we conclude that the Code does not impose such an empty requirement. When a patient's admission pursuant to a previous petition ends (due to lapse of time, court order for discharge, or any other reason), a treatment facility need not physically release the patient before initiating new involuntary commitment proceedings.

In reaching the opposite conclusion, the Fifth District in <u>Helen S.</u> and <u>Nancy A.</u> either distinguished or criticized the holdings in <u>Shaw</u> and <u>Read</u>. See <u>Helen S.</u>, 342 Ill. App. 3d at 335 (implying that <u>Shaw</u> was unsound but then stating that it and <u>Read</u> were distinguishable and applying a rule that contradicted them); <u>Nancy A.</u>, 342 Ill. App. 3d at 361-64 (distinguishing <u>Shaw</u> and <u>Read</u> and applying a rule that contradicted them). The source of the Fifth District's criticism of <u>Shaw</u> is the Third District's opinion in <u>In re Guthrie</u>, 196 Ill. App. 3d 352 (1990). However, the whole of <u>Guthrie</u>'s discussion of the merits of <u>Shaw</u> is as follows: "we decline to follow the reasoning of <u>Shaw</u> to the extent that it is inconsistent with the principle that a mandatory requirement of discharge under the Code cannot be circumvented by utilizing other sections of the Code." <u>Guthrie</u>, 196 Ill. App. 3d at 354. The reasoning in <u>Shaw</u> is in no way inconsistent with the principle that a mandatory discharge under the Code must be obeyed. What <u>Shaw</u> says, and what we say in this case, is that, even after a court-ordered discharge, a respondent is subject to subsequent valid petitions. As <u>Shaw</u> noted, any improper failure to obey a mandatory discharge prior to a subsequent valid petition may give rise to a separate cause of action, but that cause of action will have no effect on a valid subsequent petition. The criticism of the reasoning in <u>Shaw</u> is thus entirely unpersuasive to us, and

we do not heed it.  We instead depart from the Fifth District's holdings in <u>Helen S.</u> and <u>Nancy A.</u>

The parties in this case direct their arguments toward the questions of whether respondent was actually discharged pursuant to court order on June 19 before the petition at issue was filed and, if not, whether his actual physical discharge was necessary.  This is the approach the court in <u>Read</u> appeared to follow.  There, the court dismissed the first petition against the respondent and ordered him discharged, and, that same day, a second petition was executed.  <u>Read</u>, 228 Ill. App. 3d at 665.  The recitation of facts in <u>Read</u> is ambiguous regarding what occurred in the time between the court's discharge order and the execution of the second petition.  At one point, the decision states that the respondent "did not physically leave the facility <u>because</u> the second petition for judicial admission had been filed" (emphasis added) (<u>Read</u>, 228 Ill. App. 3d at 665) and, at another point, it states that "there [was] nothing in the record showing that [the respondent] tried to leave the facility or that he wanted to leave or that he was prevented from leaving" (<u>Read</u>, 228 Ill. App. 3d at 667).  In any event, the court in <u>Read</u> held that the respondent had been validly detained pursuant to the second petition.  Its reason for doing so, like its description of the facts, is unclear.  At one point, the decision states that "the actual physical release of [the respondent] from the facility was not necessary in order to comply with the statutory definition of a 'discharge.' "  <u>Read</u>, 228 Ill. App. 3d at 667.  (This is a dubious conclusion, given that the statutory definition of "discharge" was, and is, "the full release of any person admitted or otherwise detained *** from treatment, habilitation, or care and custody." See Ill. Rev. Stat. 1989, ch. 91½, par. 1--109; see also 405 ILCS 5/1--109 (West 2006)).  At another point, the court in <u>Read</u> recited the reasoning from <u>Shaw</u> we rely on above.  See <u>Read</u>, 228 Ill. App.

-11-

3d at 667. Based on our discussion above, however, we conclude that compliance with the statutory definition of "discharge" was unnecessary here, because the failure to discharge (irrespective of the "actual physical release" issue raised by Read) is irrelevant to the validity of any subsequent petitions. Accordingly, we reject respondent's argument, and we depart from any portions of Read that contradict our holding.

Even though we adopt the portions of Shaw we recite above, there are two facets of that decision we do not adopt. First, the court in Shaw stated that strict compliance with the Code is required not only because "important liberty interests [are] affected" in such cases, but also because "jurisdiction [in mental health cases] is by statutory grant." Shaw, 153 Ill. App. 3d at 943. Based on this statement regarding jurisdiction, Shaw stated that "[n]oncompliance with the statutory prerequisites [can deprive] [a] court of jurisdiction to hear [a] petition" under the Code. Shaw, 153 Ill. App. 3d at 943. This fundamentally mistaken view of jurisdiction in mental health cases has been perpetuated in subsequent case law. See, e.g., Read, 228 Ill. App. 3d at 667-68 (reciting jurisdictional statements from Shaw without refuting them); People v. Valentine, 201 Ill. App. 3d 10, 13-14 (1990) ("Any noncompliance with the statutory prescribed involuntary commitment procedures renders the judgment entered in such a cause erroneous and of no effect"). We trace the misstatements from Shaw to our supreme court's decision in People ex rel. Curtin v. Heizer, 36 Ill. 2d 438 (1967). See Shaw, 153 Ill. App. 3d at 943, citing In re King, 148 Ill. App. 3d 741, 745 (1986), citing In re Whittenberg, 143 Ill. App. 3d 836, 838 (1986), citing In re Hays, 115 Ill. App. 3d 686, 689 (1983), and Heizer, 36 Ill. 2d 438. In Heizer, an appeal challenging whether a fire protection district had been properly organized pursuant to statutory requirements, the supreme court

noted that "the county court derived its jurisdiction to proceed *** solely from statute" and stated that, because "[t]he General Assembly *** authorized the creation of [fire protection districts] upon certain conditions, those conditions must be complied with in the manner prescribed by statute, else the court is without jurisdiction" to establish the district. Heizer, 36 Ill. 2d at 441. For these propositions, Heizer relied on cases predating the 1964 amendments to the judicial article of the 1870 constitution. Under the current 1970 constitution, which incorporates the 1964 amendments, except in administrative review "the jurisdiction of the circuit court is conferred by the constitution, not the legislature." Belleville Toyota Inc. v. Toyota Motor Sales U.S.A., Inc., 199 Ill. 2d 325, 336 (2002), citing Ill. Const. 1970, art. VI, §9. The view of jurisdiction articulated in Shaw (and other cases) is no more than a vestige of outmoded law under our state's previous constitution, and, as our supreme court emphatically explained in Belleville Toyota, it has no application today. Thus, Shaw was incorrect in stating that a trial court lacks jurisdiction when a petition does not comply with the Code. Cases are wrong in holding that a faulty petition causes any judgment entered on the petition to be void for lack of jurisdiction. Such a judgment has full effect unless and until it is reversed by a reviewing court (or reconsidered by the trial court). While it may be true to say that such a judgment no longer has effect after it has been reversed, the ineffectiveness is caused by the action of the reviewing court, not a lack of jurisdiction in the trial court.

Cases that state the contrary and interpose notions of jurisdiction where they do not belong muddle an area of the law our supreme court forcefully clarified in Belleville Toyota, and they invite even further confusion from parties and courts who would extend the misbegotten rule. For example, the respondent in Read, relying on cases incorrectly invoking jurisdiction as the reason the

Code requires compliance, argued that, "if the failure to release a respondent pursuant to a statutorily mandated release provision deprives the trial court of jurisdiction [citation], surely the failure to release [him] pursuant to another statutorily mandated release provision deprived [the mental health facility] of the authority to detain [him]." Read, 228 Ill. App. 3d at 666. (Mental health facilities, of course, are not courts, and the concept of jurisdiction has no effect on their "authority.") This argument illustrates the danger of thoughtless repetition of the idea that failure to comply with the Code has some effect on jurisdiction. Again, except in administrative review, the failure to comply with a statute does not deprive the trial court of jurisdiction. Any failure to follow a statutorily mandated provision renders a judgment erroneous, not void. Read, and the host of other cases that rely on similar misconceptions of jurisdiction, gets this wrong.

The second facet of the decision in Shaw that we ignore formed part of its holding, which we recited above only in part and without reference to the portions with which we disagree. In reaching its holding that the propriety of the respondent's detention, and the validity of any previous petitions, had no effect on the validity of the petition at issue, the court ruled that the subsequent petition was filed under article VII of the Code, not section 3--403 of the Code. Shaw, 153 Ill. App. 3d at 944. In so ruling, the court relied on the rule that "there is nothing to prevent the refiling of an otherwise valid second petition under a different article of the Code." (Emphasis added.) Shaw, 153 Ill. App. 3d at 944. (It is this emphasized portion of the rule relied on in Shaw that we omitted above.) We see no reason for the emphasized qualification stated in this rule. Even if a subsequent petition is filed under the same article of the Code, we find nothing in the Code to forestall the petition if it is otherwise valid. In fact, the opposite rule--once an invalid petition has been filed

-14-

under one article of the Code, a subsequent petition must be filed under a different article--would be absurd: that rule would immunize a respondent from any subsequent petition filed under the same article of the Code. The reasoning that was essential to the holding in Shaw was that, once an involuntary admission petition is deemed invalid, the respondent "is no longer a patient at all" and is subject to involuntary admission "as in any other appropriate case" (i.e., subject to commitment in the same manner any person on the street would be). Shaw, 153 Ill. App. 3d at 945. This rationale applies regardless of the nature of the subsequent petition. Thus, we deem gratuitous the qualification that the subsequent petition be filed under a different article of the Code from the prior petition, and we do not follow it.[2]

For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

GROMETER and JORGENSEN, JJ., concur.

---

[2] The court's holding that the subsequent petition was filed under article VII of the Code was intended to avoid the timing requirements of section 3--403, which did not apply to article VII. See Shaw, 153 Ill. App. 3d at 944. However, article VII of the Code nevertheless contained its own requirement, not recognized in Shaw, that a respondent receive a hearing within five days of the filing of a petition, and that requirement was not met in Shaw. See Ill. Rev. Stat. 1985, ch. 91½, par. 3--706. This fatal flaw in Shaw's reasoning in invoking another article of the Code provides further cause to discard its reliance on the distinction among articles of the Code, for purposes of this discussion.