Docket No. 107498.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

*In re* ANDREW B. (The People of the State of Illinois, Appellee v. Andrew B., Appellant).

*Opinion filed February 19, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The question presented in this appeal is whether section 3–611 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3–611 (West 2006)) and the discharge provisions in sections 1–109 and 2–104 of the Code (405 ILCS 5/1–109, 2–104 (West 2006)) mandate full physical release of an individual previously ordered discharged before the State may file a subsequent petition for involuntary admission.

The circuit court of Winnebago County ordered that respondent be involuntarily admitted pursuant to section 3–600 of the Code (405 ILCS 5/3–600 (West 2006)). The appellate court affirmed, rejecting respondent's argument that the petition seeking his involuntary

admission was untimely filed under section 3–611 of the Code. 386 Ill. App. 3d 337, 347. For the reasons that follow, we affirm the judgment of the appellate court.

## I. BACKGROUND

The instant case arises from a series of commitment proceedings involving respondent, Andrew B., an individual with a history of mental illness. On March 26, 2007, respondent voluntarily admitted himself to Singer Mental Health Center. On May 7, 2007, respondent expressed a desire to leave the facility, and a social worker filed a petition for respondent's involuntary admission under sections 3–403 and 3–404 of the Code (405 ILCS 5/3–403, 3–404 (West 2006)).[1] Ultimately, the State voluntarily dismissed the petition, and the trial court ordered respondent discharged on June 12, 2007, but respondent was not physically released. Instead, the next day a social worker filed a petition for respondent's emergency admission by certificate under section 3–600 of the Code (405 ILCS 5/3–600 (West 2006)). As with the previous petition, this petition was voluntarily dismissed by the State, and the court again ordered respondent discharged on June 19, 2007. Respondent, however, was not released, and on June 20, 2007, a social worker filed another petition for his emergency admission under section 3–600.

The June 20, 2007, petition is the subject of the instant appeal. The petition alleged that respondent was delusional, unable to protect himself from harm, consumed only one-third of his meals, refused his medications, and drank dangerous amounts of water. Two accompanying psychiatrists' certificates were attached to the petition and contained similar allegations. The trial court ordered respondent evaluated by a qualified examiner and scheduled a hearing on the matter.

Respondent filed a motion to dismiss the petition, arguing that because he was never physically released pursuant to the court's previous discharge orders, his continued detention at the facility

---

[1]Respondent contends an earlier petition for involuntary admission was dismissed by the trial court on April 10, 2007, and he was ordered discharged, but the record does not contain this order.

violated his rights under the Code and entitled him to a full and complete release. The court denied respondent's motion to dismiss, concluding "the failure to discharge [respondent], if there was, in fact, a failure, and it's not clear that there was" did not necessarily invalidate otherwise valid subsequent emergency admission proceedings.

At the hearing, the State presented the testimony of Dr. Howard Paul, a psychiatrist, and Dr. William Welch, the court-appointed examiner and clinical psychologist. Dr. Paul treated respondent since his admission, and he believed respondent needed immediate hospitalization because he suffered from paranoid schizophrenia. Dr. Paul opined respondent was reasonably expected to inflict serious physical harm on himself or other individuals and had shown conduct that would cause others to believe respondent would harm them. Dr. Paul further opined respondent could not take care of his own basic physical needs because he consumed excessive quantities of water, causing potentially fatal seizures from a dangerously low level of sodium in his blood. According to Dr. Paul, on at least one occasion, respondent had a grand mal seizure as a consequence of his diminished blood-sodium level. Dr. Paul believed hospitalization was the least restrictive environment for respondent.

Dr. Welch, the court-appointed examiner, testified that respondent generally refused to talk during his interviews. Dr. Welch reviewed respondent's medical record and, in his opinion, respondent was seriously mentally ill and unable to care for his own basic physical needs.

Following the hearing, the trial court found the State proved by clear and convincing evidence that respondent was mentally ill and could not provide for his basic needs to protect himself from serious harm and, therefore, was subject to involuntary admission for 90 days. The court further found that hospitalization was the least restrictive alternative.

On appeal, respondent argued the trial court's order should be reversed because the emergency petition was untimely filed. 386 Ill. App. 3d at 338. According to respondent, although the trial court twice ordered his discharge from the facility, he was not physically released and was continually confined since his request to leave on May 7. Citing section 3–611's mandate that a petition be filed within

24 hours of admission (405 ILCS 5/3–611 (West 2006)), respondent argued that the petition at issue, filed June 20, was not filed within 24 hours of his admission and was therefore invalid.

The appellate court first determined that, while the expiration of the underlying 90-day admission period rendered respondent's appeal moot, his claims should be considered under the public interest exception to the mootness doctrine. The court next recognized that respondent's argument challenging the validity of the petition based on its timeliness and his continuous detention mirrored the arguments accepted by the courts in *In re Helen S.*, 342 Ill. App. 3d 330 (2003), and *In re Nancy A.*, 342 Ill. App. 3d 355 (2003). *Helen S.* and *Nancy A.* held that when a petition seeking involuntary admission of a patient was dismissed and the patient ordered discharged, but the patient was not physically released, any subsequent petitions were untimely under section 3–611 if not filed within 24 hours of the patient's initial admission.

The appellate court, however, disagreed with *Helen S.* and *Nancy A.* and reached the opposite conclusion. Relying on *In re Shaw*, 153 Ill. App. 3d 939 (1987), the court concluded that when a petition seeking involuntary admission of a patient is dismissed and the patient ordered discharged, a new petition could still be filed, regardless of whether the individual was physically released. Citing *Shaw*, the court reasoned that after dismissal of the petition and entry of the discharge order, the facility no longer had authority to detain the individual because he or she could no longer be considered a patient.

Nonetheless, according to the court, if that individual thereafter exhibited symptoms warranting involuntary admission, the individual could be detained for 24 hours pending the filing of a new petition. The court explained that "[t]he validity of this new petition has no relation to the validity of the old petition, nor is it tainted by any impropriety in the respondent's prior detention. A new petition begins a new proceeding, to be judged for validity independent of any prior proceedings." Accordingly, the appellate court affirmed the trial court's judgment. 386 Ill. App. 3d at 347.

We allowed respondent's petition for leave to appeal. 210 Ill. 2d R. 315.

## II. ANALYSIS

On appeal, respondent challenges the trial court's involuntary-admission order. Initially, however, we note this appeal is moot because respondent's underlying 90-day admission period has expired. *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009). Therefore, we must determine whether an exception to the mootness doctrine applies. *Alfred H.H.*, 233 Ill. 2d at 351. We first consider the public interest exception because the appellate court found the exception allowed review of respondent's appeal. 386 Ill. App. 3d at 340. The State also agrees that the public interest exception applies here.

The public interest exception permits review of an otherwise moot appeal when: (1) the issue is of a public nature; (2) an authoritative determination is necessary to guide public officers in future cases; and (3) there is a likelihood the issue will recur. *Alfred H.H.*, 233 Ill. 2d at 355. This exception must be construed narrowly and established by a clear showing of each criterion. *Alfred H.H.*, 233 Ill. 2d at 355.

Here, respondent challenges the validity of a petition seeking his involuntary admission filed after the facility did not physically release him following multiple discharge orders. This issue undeniably presents a question of public nature because it involves a dispute over the procedural requirements for involuntarily admitting individuals previously ordered discharged, thus satisfying the exception's first element. The second element is satisfied because our appellate court is divided on the issue, resulting in the need for an authoritative determination by this court. The third element is also satisfied because, as illustrated in this case, the issue is likely to recur when mental-health professionals believe continued involuntary admission is warranted after entry of a discharge order. Consequently, we conclude the public interest exception applies and next address the merits of respondent's claims.

Respondent argues strict compliance with the Code's definition of discharge is required and, therefore, he was entitled to physical release after the trial court ordered his discharge. Citing sections 1–109 and 2–104 of the Code (405 ILCS 5/1–109, 2–104 (West 2006)), respondent observes that discharge is defined as "the full release of any person admitted or otherwise detained under [the Code] from treatment, habilitation, or care and custody," and when an individual is discharged he is statutorily entitled to receive all of his lawful

personal property from the mental-health facility.

Relying on section 3–611 of the Code (405 ILCS 5/3–611 (West 2006)), respondent contends that a petition seeking involuntary admission must be filed within 24 hours of an individual's admission to a mental-health facility. Respondent argues because he was not physically released, but instead was continuously detained, the subsequent petitions were untimely filed after 24 hours of his original admission, citing *Helen S.* and *Nancy A.*

These claims require statutory construction, presenting a question of law we review *de novo*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). When construing a statute, our goal is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. *People v. Lewis*, 234 Ill. 2d 32, 44 (2009). We must consider the entire statute in light of the subject it addresses, presuming the legislature did not intend absurd, unjust, or inconvenient results. *Lewis*, 234 Ill. 2d at 44. Reviewing courts will not depart from the statute's plain language by reading into it conditions, exceptions, or limitations that contravene legislative intent. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 390 (2009).

Because respondent was involuntarily admitted pursuant to article VI of the Code (405 ILCS 5/3–600 *et seq.* (West 2006)), providing for emergency admission by certification, we first briefly outline the applicable statutory framework. Section 3–600 authorizes involuntary admission of a person 18 years of age or older in need of immediate hospitalization. 405 ILCS 5/3–600 (West 2006). When an individual is believed to be subject to involuntary admission under that section, a petition may be filed with a mental-health facility. 405 ILCS 5/3–601(a) (West 2006).

The petition must include, *inter alia*, a detailed statement explaining why the individual is subject to involuntary admission, including signs and symptoms of a mental illness and any acts, threats, or other behavior supporting the allegation. 405 ILCS 5/3–601(b)(1) (West 2006). The petition must also be accompanied by a certificate of a physician, qualified examiner, or clinical psychologist stating the individual is subject to involuntary admission and requires immediate hospitalization. 405 ILCS 5/3–602 (West 2006). The certifying professional's statement must be based on a physical examination of

the individual made within 72 hours of the admission. 405 ILCS 5/3–602 (West 2006).

Ultimately, section 3–611 requires the mental-health facility director to file in the trial court the petition and two supporting certificates within 24 hours after the individual is admitted to the facility. 405 ILCS 5/3–611 (West 2006). A final order for involuntary admission is limited to 90 days, subject to extension if the trial court determines the individual is subject to continued involuntary admission. 405 ILCS 5/3–813 (West 2006).

Section 3–611, in relevant part, provides:

> "Within 24 hours, excluding Saturdays, Sundays and holidays, after the respondent's admission under [article VI], the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court. *** Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after receipt of the petition." 405 ILCS 5/3–611 (West 2006).

Thus, section 3–611's 24-hour filing requirement is triggered by an individual's *admission* under article VI, providing for emergency involuntary admission by certificate. Respondent contends, for purposes of section 3–611, his admission commenced with his original physical entry into the mental-health facility on March 26, 2007. We note, however, that respondent was not admitted pursuant to article VI when he first entered the facility, making inapplicable the 24-hour filing requirement of section 3–611.

Moreover, although the Code does not define the term "admission," respondent's construction of the term as meaning only physical entry into a facility is inconsistent with the use of the term in other provisions of the Code. See *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 410 (2009) (reviewing court should not review statutory provisions in isolation, but should instead review the terms in consideration with other

relevant provisions). Section 3–813 allows continued involuntary admission beyond the initial 90 days when the trial court finds "the recipient continues to be subject to involuntary admission." 405 ILCS 5/3–813 (West 2006). Section 3–801 provides that "[a] respondent may request admission as an informal or voluntary recipient at any time prior to an adjudication that he is subject to involuntary admission." 405 ILCS 5/3–801 (West 2006). These provisions clearly allow a patient who is physically inside a mental-health facility to be subjected to another "admission" when his condition warrants additional treatment or care.

A reasonable construction of these provisions, therefore, is that the Code refers to "admission" in a legal sense to describe the individual's legal status. As the State contends, this consists of a combination of the person's susceptibility to being detained and his actual detention. In other words, section 3–611's reference to "admission" is not always limited to the individual's original physical entry. When, as here, the individual is physically present in a mental-health facility and requires additional care and treatment following entry of a discharge order, section 3–611's 24-hour filing period logically begins when a new petition is presented to the facility director, as opposed to the date of his original physical entry into the facility. Accordingly, the June 19, 2007, petition seeking respondent's emergency involuntary admission under article VI was timely because it was filed within 24 hours after it was presented to the facility director.

Respondent also relies on the Code's definition of discharge and the statutory requirement that his belongings must be returned to him upon discharge. According to respondent, these statutory provisions, with section 3–611, require that when a patient is ordered discharged, the patient must be physically released from the facility before the State may file a new involuntary-admission petition. Respondent's argument is supported by the appellate court's decisions in *Helen S.* and *Nancy A.*

In *Helen S.* and *Nancy A.*, the appellate court determined when an involuntary-admission petition is dismissed but the individual is not physically released, a subsequently filed petition must be dismissed as untimely under section 3–611 if not filed within 24 hours of the initial admission date. *Helen S.*, 342 Ill. App. 3d at 335-36; *Nancy A.*, 342

-8-

Ill. App. 3d at 364. The court in both decisions concluded, absent a physical release, there was only one "admission" for purposes of section 3–611. *Helen S.*, 342 Ill. App. 3d at 335-36; *Nancy A.*, 342 Ill. App. 3d at 364.

Respondent's argument and the decisions in *Helen S.* and *Nancy A.* contradict our determination that the term "admission" is not limited to an individual's physical entry into a mental-health facility, and overlook the plain meaning of the Code's definitions related to discharge. It is undisputed that section 1–109 of the Code defines discharge as the "full release" of an individual, and section 2–104 of the Code requires the return of the individual's belongings upon discharge. 405 ILCS 5/1–109, 2–104 (West 2006). Neither of these provisions, nor section 3–611, however, require that a respondent ordered discharged must be physically released from the facility before commencement of subsequent involuntary-admission proceedings under article VI. Instead, the only express requirements for filing a section 3–600 petition and accompanying supporting certificates are contained in sections 3–601(b) and 3–602 (405 ILCS 5/3–601(b), 3–602 (West 2006)).

Respondent's position, therefore, essentially requires this court to mandate full physical release of an individual ordered discharge before commencement of new involuntary-admission proceedings, in the total absence of any express or implied legislative intent to impose that requirement. Respondent's argument violates the fundamental principle of statutory construction that this court cannot read into the statute additional elements not intended by the legislature. *Weather-Tite, Inc.*, 233 Ill. 2d at 390. Consequently, we reject his argument that the Code requires physical release of an individual ordered discharged before commencement of new involuntary-admission proceedings.

Supporting our construction of the Code, the appellate court in *People v. Read*, 228 Ill. App. 3d 664, 667 (1992), determined that prior physical release of the respondent is not required before the State may initiate new involuntary-admission procedures. Noting the trial court had entered a discharge order, the *Read* court concluded that requiring physical release from the facility would require the court to "construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved."

*Read*, 228 Ill. App. 3d at 667. Thus, the *Read* court concluded the State was permitted to initiate new involuntary-admission procedures despite the facility's failure to relinquish physical custody of the respondent. *Read*, 228 Ill. App. 3d at 667.

The appellate court reached a similar conclusion in *Shaw*. In that case, a voluntarily admitted patient requested discharge within the five days mandated by the Code. *Shaw*, 153 Ill. App. 3d at 940. The respondent was not released within the requisite five days, however, and an involuntary-admission petition was filed. *Shaw*, 153 Ill. App. 3d at 940. The trial court dismissed that petition and ordered his discharge, but he was not physically released and a second petition was filed. *Shaw*, 153 Ill. App. 3d at 940. Ultimately, the trial court ordered the respondent's involuntary admission based on this second petition. *Shaw*, 153 Ill. App. 3d at 941.

The *Shaw* court acknowledged that the respondent should have been physically released, but nonetheless determined that the respondent was technically no longer a patient after the expiration of the statutory time frame entitling him to discharge. *Shaw*, 153 Ill. App. 3d at 945. Rejecting the respondent's challenge to his involuntary admission based on the failure to release him, the *Shaw* court reasoned "the mere failure to discharge, whether or not occasioned by the mental health facility's own omission in failing to follow through on a court order, does not necessarily insulate the respondent from subsequent, otherwise-valid involuntary proceedings." *Shaw*, 153 Ill. App. 3d at 945.

Consistent with *Read*, *Shaw*, and the plain meaning of the Code's provisions,[2] we conclude that section 3–611's 24-hour filing requirement and the discharge provisions in sections 1–109 and 2–104 do not prohibit the State from filing a petition for involuntary admission of an individual who had previously been ordered discharged but was not physically released. Because *Helen S.* and *Nancy A.* contradict our conclusion, we overrule those decisions.

Here, respondent's admission legally ended when the trial court

---

[2]We cite *Read* and *Shaw* only for the proposition that failure to release an individual following a discharge order does not prevent the State from initiating a new involuntary-admission proceeding.

entered the discharge order. A valid petition for emergency admission under article VI was then timely filed by the facility in compliance with section 3–611. Although the facility did not physically release respondent, his continued presence inside the facility did not invalidate the subsequently filed petition. As the appellate court concluded here, "[a] new petition begins a new proceeding, to be judged for validity independent of any prior proceedings." 386 Ill. App. 3d at 342.

Although we reject respondent's construction of the Code, we find it necessary to express our concern with the series of events that occurred in this case. After respondent requested discharge he was twice ordered discharged, but, for reasons not entirely clear in the record, he was not released. Instead, the State repeatedly sought his involuntary admission, and eventually was successful. Although the State timely filed the multiple petitions seeking respondent's admission as required by the Code, we are still troubled by the potential that mental-health facilities could file repetitive petitions, resulting in the indefinite confinement of an individual without a court's examination of the matter.

The State acknowledges "that the existence of a legal power to file a valid petition for involuntary commitment before the duty to discharge a person is fully implemented does not mean that this power is exempted from judicial supervision, or that courts must disregard an abuse of power if it occurs." As even the State concedes, an unrestrained and unlimited pattern of repeatedly dismissing and refiling involuntary-admission petitions "could be abused to deprive a person of his liberty, contrary to one of the Mental Health Code's fundamental purposes." We agree, and remind our courts to be ever vigilant to protect against abuses of power and preserve the fundamental liberty interests of individuals subjected to involuntary-admission proceedings.

More importantly, though, is our belief that this matter is one that deserves the attention of the General Assembly. Our appellate court has observed an increasing number of involuntary-commitment cases requiring review. See *In re Dorothy J.N.*, 373 Ill. App. 3d 332, 338 (2007) (Steigmann, P.J., specially concurring) (noting that 50 decisions were rendered by the court regarding involuntary admissions in one year). The appellate court has also repeatedly expressed serious concerns with the State's failure to adhere to the Code's procedural

safeguards meant to protect the fundamental liberty interests at stake. See, *e.g.*, *In re Suzette D.*, 388 Ill. App. 3d 978, 987 (2009) ("we find the State's perfunctory manner in prosecuting these [involuntary-admission] petitions disturbing"); *In re John R.*, 339 Ill. App. 3d 778, 785 (2003) (admonishing that proceedings under the Code "should not be conducted *pro forma*"); *In re Luttrell*, 261 Ill. App. 3d 221, 230-31 (1994) (collecting cases) (expressing "dismay at the slipshod manner with which these cases are handled" and concluding that the State routinely disregards procedural safeguards). We agree with the appellate court's view and reiterate our sincere belief that the General Assembly should carefully consider the challenging issues presented by these cases. As one appellate court justice asserted, "[m]ental-health cases are treated differently than other proceedings because we have permitted them to become different." *In re Lisa G.C.*, 373 Ill. App. 3d 586, 598 (2007) (Knecht, J., dissenting).

### III. CONCLUSION

We hold that the plain meaning of section 3–611 of the Code and the statutory definitions related to discharge do not prohibit the State from filing a new petition for involuntary admission of an individual ordered discharged but who is not physically released before filing the petition. We overrule the contrary holdings in *Helen S.* and *Nancy A.* For the foregoing reasons, we affirm the appellate court's judgment.

*Appellate court judgment affirmed.*