# Illinois Official Reports

## Supreme Court

*In re James W.*, 2014 IL 114483

| | |
|---|---|
| Caption in Supreme Court: | *In re* JAMES W. (The People of the State of Illinois, Appellant, v. James W., Appellee). |
| Docket No. | 114483 |
| Filed<br>Rehearing denied | February 21, 2014<br>May 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a case in which a respondent on a petition to continue his involuntary admission to a mental health facility made an eve-of-trial jury request which was not untimely but which resulted in a 96-day delay, this was not fatal to the ultimate granting of the petition, despite a statutory 15-day limit on continuances, where the statute was directory rather than mandatory and no prejudice was shown. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Randolph County, the Hon. Richard A. Brown, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

| | |
|---|---|
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Randall Rodewald, State's Attorney, of Chester (Michael A. Scodro, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of Chicago, and Patrick Delfino, Stephen E. Norris and Sharon Shanahan, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.<br><br>Veronique Baker, Director of the Legal Advocacy Service division of the Guardianship and Advocacy Commission, of Alton (Barbara A. Goeben, Ann Krasuski and Laurel Spahn, of counsel), for appellee.<br><br>Mark J. Heyrman, of Chicago, for *amici curiae* Mental Health America of Illinois and Mental Health Project of the Edwin F. Mandel Legal Aid Clinic. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion.<br>Justices Thomas and Kilbride concurred in the judgment and opinion.<br>Justice Theis specially concurred, with opinion.<br>Justice Burke concurred in part and dissented in part, with opinion, joined by Chief Justice Garman and Justice Freeman. |

## OPINION

¶ 1 The issue in this case is whether a judgment continuing a patient's involuntary admission to a mental health facility pursuant to chapter 3, article VIII, of the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/3-800 *et seq.* (West 2010)) is fatally infirm because of the length of time—96 days—between the patient's demand for a jury trial and the date when the jury trial took place. The appellate court held that under the particular circumstances present here, the delay in conducting the hearing was significant enough to be prejudicial to the patient and that the circuit court of Randolph County's judgment must be reversed. 2012 IL App (5th) 100422. We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We also allowed Mental Health of America and the Mental Health Project of the Edwin F. Mandel Legal Aid Clinic at the University of Chicago School of Law to file a friend of the court brief. Ill. S. Ct. R. 345 (eff. Sept. 10, 2010). For the reasons that follow, we now reverse.

¶ 2 BACKGROUND

¶ 3 James W. is a 60-year old male with a lengthy criminal record and a history of psychiatric hospitalizations. At the time of the events giving rise to this litigation, James W. was being

held involuntarily at the Chester Mental Health Center, a facility operated by this State's Department of Human Services "for the care, custody, and treatment of persons with mental illness or habilitation of persons with developmental disabilities." 20 ILCS 1705/14 (West 2010). James had resided at Chester since December 12, 2003, pursuant to a succession of involuntary commitment orders entered under the Mental Health Code after he had reached the mandatory parole date on criminal sentences he was serving at the Dixon Correctional Center.

¶ 4 In April 2010, as James W.'s most recent involuntary commitment order was about to expire, David Dunker, director of the Chester facility, filed a petition in circuit court pursuant to section 3-813 of the Mental Health Code (405 ILCS 5/3-813 (West 2010)) alleging that James W. continued to be subject to involuntary admission on an inpatient basis.[1] As required by section 3-813, the petition was supported by certificates from two mental health professionals, a psychiatrist and a psychologist, stating that in their opinions, James W. was "[a] person with mental illness who, because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future ***; is unable to provide for his basic physical needs so as to guard himself from serious harm, without the assistance of family or outside help; [and is] in need of immediate hospitalization for the prevention of such harm." The certificates also detailed James W.'s prior history, including his numerous arrests and convictions, his ongoing psychosis and chronic assaultive behavior, his diagnosis as a schizophrenic and chronic paranoid, his treatment with various anti-psychotic drugs, and his "systematized delusions," including delusions that he suffered from a sexually transmitted disease and that his food was being poisoned. Also supporting the petition was the statutorily required current treatment plan, which included an evaluation of James W.'s progress and the extent to which he is benefitting from treatment. See 405 ILCS 5/3-813(a) (West 2010).

¶ 5 The petition to continue James W.'s involuntary admission was filed on April 29, 2010. That same day, the circuit court entered an order setting the matter for a hearing on May 5, 2010, and appointing counsel to represent James. James's attorney appeared before the court on the fifth and requested that the court order an independent evaluation of his client as authorized by section 3-804 of the Mental Health Code (405 ILCS 5/3-804 (West 2010)). At the conclusion of that hearing, the court granted counsel's request, appointed Dr. N. Vallabhaneni to conduct the examination, ordered Vallabhaneni to submit a written report to counsel and the court, and set the matter for another hearing on May 19, 2010.

¶ 6 Dr. Vallabhaneni met with James W. in person at the Chester facility on May 18, 2010. Based on his examination of James and his review of James's medical records, Dr. Vallabhaneni opined that James suffered from serious mental illness, specifically "Schizophrenia, Paranoid" and "Personality Disorder with many Anti-Social and Paranoid Features." Dr. Vallabhaneni was of the view that because of James's mental illness, James "is reasonably expected to engage in dangerous conduct, which may include threatening behavior

---

[1]The appellate court's opinion states that the petition was filed by Dr. Kathryn Holt. 2012 IL App (5th) 100422, ¶ 3. Dr. Holt provided one of the certificates supporting the petition, but the petition itself was brought by Dunker.

or conduct that places him in reasonable expectation of harm. He is also a person with mental illness who because of the nature of his illness is unable to understand his need for treatment and if not treated is reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration or both to the point that the person is reasonably expected to engage in dangerous conduct."

¶ 7    Finally, Dr. Vallabhaneni concluded that because of James's "chronic psychiatric condition and lack of response to the treatment, and his own belief of not having any mental illness, he has a tendency to refuse psychiatric treatment, including medication. He is currently stationed at Chester Mental Health Center as an inpatient. This writer recommends that [he] be committed as an involuntary patient for further treatment without which he is likely to decompensate or deteriorate to inflict harm upon himself or others."

¶ 8    As scheduled, the matter was called for a hearing on May 19, 2010. Dr. Vallabhaneni was present and prepared to testify. Before any evidence was presented, however, James W.'s attorney advised the court that his client had elected to exercise his right to have a jury decide whether he should continue to be subject to involuntary admission on an inpatient basis. See 405 ILCS 5/3-802 (West 2010).

¶ 9    The court questioned James W. to confirm that he did, in fact, wish to have a jury trial. When James W. answered in the affirmative, the court advised him that "we don't have any other juries *** for mental health until August" and asked him if he understood that. James W. responded, "Yeah, I'll wait." The court then advised him that it would set the matter for a jury trial in August, but cautioned that doing so would mean that he would have to remain at the Chester facility until then. James W. responded that he understood, adding, "I ain't going nowhere noway."

¶ 10    There being no objection, the matter was duly set for a jury trial on August 23, 2010. During that trial only two witnesses testified, Dr. Vallabhaneni and James W. himself. Dr. Vallabhaneni's testimony was consistent with the contents of the written report he had prepared following his evaluation of James W. the previous May, and there was no suggestion during direct or cross-examination that James W.'s mental status had changed in any way during the interim.

¶ 11    James W., for his part, expressed surprise that he had a court date that day, and stated that he was not feeling any better than when he first became a resident of the Chester facility in 2003. He testified that he believed he could provide for himself if released, that he had family and friends who could help him, that he would continue to take his medicine, that he was not hearing voices or hallucinating, and that he did not believe he would be a danger to himself or others. On cross-examination, James admitted that he had not been out on his own since 2002 and then only for four months before he "messed up." He denied having told his doctor that he wanted to be released "because God wants his king," and he recounted details of various incidents of violence in which he had been involved, claiming that in each instance he was the victim rather than the aggressor.

¶ 12    Following the presentation of the evidence and closing argument, the matter was submitted to the jury. The jury subsequently returned with a unanimous verdict that James was a person subject to involuntary admission under the applicable law. The court entered judgment on the

verdict, and ordered James W. to "be hospitalized in the Department of Human Services, which is the least restrictive environment currently appropriate and available." The court's written order was filed August 23, 2010, and, by its terms, was to remain in effect for 180 days.

¶ 13 James W. indicated his desire to appeal, and the circuit court appointed an attorney from the Guardianship and Mental Health Advocacy Commission to represent him. In the appellate court, James W. argued that the time between when he asked for a jury trial (May 19, 2010) and when the jury trial was ultimately held (August 23, 2010), a period of 96 days, was longer than the Mental Health Code permits and that the judgment entered on the jury's verdict must therefore be reversed.[2] James W. further argued that reversal was also required because the State's petition to continue James's involuntary admission did not list his friends or family members.

¶ 14 While the case was pending on appeal, the August 23, 2010, involuntary admission order entered by the circuit court expired and could no longer serve as the basis for hospitalizing James. This rendered the case moot. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Although there is no *per se* exception to the mootness doctrine that applies universally to mental health cases (*id.* at 355), the parties argued and the appellate court agreed that the case fell within the public interest exception to the mootness doctrine because the issue it presented regarding the timeliness of the jury trial is a matter of public concern, an authoritative determination is needed to guide public officials and the courts, and the question is likely to recur. 2012 IL App (5th) 100422, ¶ 8.

¶ 15 The appellate court then turned to the merits of the case, concluding that it could only affirm the circuit court's judgment if it found that the delay in conducting the jury trial was not prejudicial to James. *Id.* ¶ 20. In undertaking that assessment, the court acknowledged that some delay was necessitated by the fact that James did not make his jury demand until just before the evidentiary hearing on the petition was about to begin. It opined, however, that the delay was so far beyond the regular hearing times contemplated by the Mental Health Code that the prejudice to James was "self-evident." *Id.* ¶ 28. The court further noted that there was nothing in the record to indicate that a delay of this length was necessary to accommodate James's jury demand. In the court's view, things took as long as they did simply because no attempt had been made to "comply with the statutory provisions." *Id.* The court also rejected the State's argument that James should be precluded from complaining of the delay because he agreed to it. In the appellate court's view, the choice presented to James—proceed to trial immediately or wait three months to have the case heard by a jury—is one which James should not have been required to make. *Id.* ¶ 29.

¶ 16 Based on the foregoing analysis, the appellate court concluded that the circuit court's August 23, 2010, order involuntarily admitting James must be reversed. In light of that

_____

[2]The parties and the appellate court calculated the interval to be 97 days. Under Illinois law, the general rule is that time intervals are computed by excluding the first day and including the last, unless the last day is Saturday or Sunday, a circumstance not present here. See 5 ILCS 70/1.11 (West 2010). Here, that formula yields an interval of 96 days (the remaining 12 days of May, plus 30 days in June, plus 31 days in July, plus 23 days in August).

decision, the appellate court determined that there was no need for it to resolve the additional issue raised by James regarding whether the State's petition was fatally flawed because it failed to list his friends or family members. *Id.* ¶ 30.

¶ 17                                                    ANALYSIS

¶ 18        We begin our review of this case, as we must, with the question of whether we have jurisdiction to consider it. Essential to the exercise of appellate jurisdiction is the existence of an actual controversy. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). Courts of review will generally not decide questions which are abstract, hypothetical, or moot. Whether an appeal should be dismissed as moot presents a question of law, which we review *de novo*. *In re Alfred H.H.*, 233 Ill. 2d at 350.

¶ 19        The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *In re Andrea F.*, 208 Ill. 2d at 156. There is no dispute that the judgment in this case involuntarily admitting James to the Chester mental health facility expired, by its terms, long ago. We do not see, and the parties have not shown, how anything we now say about that expired judgment could have any effect on James, directly or collaterally. James's challenge to the judgment is therefore plainly moot. See *In re Andrew B.*, 237 Ill. 2d 340, 346 (2010).

¶ 20        This, however, does not end our inquiry. A reviewing court may review an otherwise moot issue pursuant to the public interest exception to the mootness doctrine. The criteria for application of the public interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur. *In re Andrea F.*, 208 Ill. 2d at 156.

¶ 21        The public interest exception is narrowly construed and requires a clear showing of each of the foregoing factors. *In re Alfred H.H.*, 233 Ill. 2d at 355-56. Such a showing was made here. At issue in this case are the procedures which must be followed before a court may authorize involuntary admission and treatment of recipients of mental health services. We have held before that these are matters of a public nature and of substantial public concern. *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002); *In re Andrew B.*, 237 Ill. 2d at 347. Because involuntary admission of mental health patients implicates substantial liberty interests (*In re Robinson*, 151 Ill. 2d 126, 130 (1992)) and there is uncertainty regarding the deadlines that must be followed in cases seeking continued involuntary admission, including deadlines for demanding and scheduling jury trials, providing authoritative guidance for public officers is clearly desirable. Moreover, we agree with the parties and the appellate court that the issues presented by this case are likely to recur. 2012 IL App (5th) 100422, ¶ 8. The appellate court was therefore correct when it concluded that this appeal could be considered on the merits under the public interest exception to the mootness doctrine.

¶ 22        As noted at the outset of this opinion, the central question presented by this case is whether the judgment continuing James W.'s involuntary admission to the Chester mental health facility pursuant to chapter 3, article VIII, of the Mental Health Code (405 ILCS 5/3-800

- 6 -

*et seq.* (West 2010)) was fatally infirm because of the length of time—96 days—between James's demand for a jury trial and the date when the jury trial took place. In resolving this question, we look first to the language of the pertinent statutory provisions.

¶ 23 The proceeding here sought to continue an existing involuntary admission which had been authorized through a succession of prior orders dating back to 2003. Such action is permitted by section 3-813 of the Mental Health Code, which provides that "[a]dditional 180 day periods of inpatient or outpatient commitment may be sought pursuant to the procedures set out in this Section for so long as the recipient continues to meet the standard for such commitment." 405 ILCS 5/3-813(b) (West 2010).

¶ 24 Section 3-813 does not specify how quickly a hearing must be conducted once a petition to continue involuntary admission to a mental health facility has been filed. It states however, that "[t]he provisions of this chapter [of the Mental Health Code] which apply whenever an initial order is sought shall apply whenever an additional period of inpatient or outpatient commitment is sought." 405 ILCS 5/3-813(b) (West 2010). The initial involuntary admission of a person on an inpatient basis upon court order, the circumstance relevant to James W.'s case, is governed by chapter 3, article VII, of the Mental Health Code (405 ILCS 5/3-700 *et seq.* (West 2010)).[3] That statute provides that

> "[t]he court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after its receipt of the second certificate [of a physician, qualified examiner, psychiatrist, or clinical psychologist that respondent is subject to involuntary admission on an inpatient basis] or after the respondent is admitted to a health facility, whichever is earlier." 405 ILCS 5/3-706 (West 2010).

¶ 25 There is no question in this case that this deadline was met. At the time the petition was filed, James was already in a mental health facility, but that was pursuant to a preexisting order, so that admission had no effect on when the clock began to run on the hearing in this proceeding for continued admission. For purposes of section 3-706, receipt of the second certificate was the operative event. The original May 5, 2010, hearing scheduled and convened by the circuit court occurred within four days, excluding the weekend, of when the new petition containing both required certificates was filed. That hearing was therefore timely.

¶ 26 At the May 5, 2010, hearing, James W. exercised his statutory right to an independent examination. 405 ILCS 5/3-804 (West 2010). To accommodate this request, the matter had to be continued. Continuances are governed by section 3-800(b) of the Mental Health Code. It provides:

> "If the court grants a continuance on its own motion or upon the motion of one of the parties, the respondent may continue to be detained pending further order of the court. Such continuance shall not extend beyond 15 days except to the extent that continuances are requested by the respondent." 405 ILCS 5/3-800(b) (West 2010).

---

[3]The appellate court invoked deadlines in chapter 3, article VI of the Code (2012 IL App (5th) 100422, ¶ 9), but that statute governs emergency involuntary admission by certification. The record is devoid of evidence that such a procedure was ever used as a basis for hospitalizing James W. involuntarily.

Because this continuance was attributable to James W., the respondent, it fell within the exception to the statute's 15-day limit. The circuit court nevertheless rescheduled the hearing for 14 days later, one day sooner than the 15 days specified in the law.

¶ 27    The record shows that when the rescheduled hearing date arrived on May 19, 2010, the State was present with its witness, Dr. Vallabhaneni, and prepared to go to trial. Had the case proceeded as scheduled, there would have been no issue whatever regarding the timeliness of the proceedings. The question arose only because, just before the case proceeded, James elected to exercise his right to a jury trial under section 3-802 of the Mental Health Code (405 ILCS 5/3-802 (West 2010)).

¶ 28    Although James W.'s request for a jury did not come until the day of the hearing, we cannot say that this rendered his request untimely. Involuntary admission proceedings conducted pursuant to the Mental Health Code are civil matters subject to the Civil Practice Law (735 ILCS 5/2-101 *et seq.* (West 2010)), except where the provisions of the Mental Health Code indicate to the contrary or are inconsistent, in which case the provisions of the Mental Health Code prevail. 405 ILCS 5/6-100 (West 2010). Under the Civil Practice Law, a defendant must normally file a jury demand no later than the filing of his or her answer. 735 ILCS 5/2-1105(a) (West 2010). No answers are required in involuntary admissions proceedings, however, so that limitation is inapplicable, and the Mental Health Code itself imposes no deadline for invoking the right to trial conferred by section 3-802 (405 ILCS 5/3-802 (West 2010)). Given this, and mindful of the principle that a statute conferring the right to a jury trial should be liberally construed in favor of granting a jury demand, our appellate court has held that a jury demand in an involuntary admission case is timely and should be allowed where, as was the case here, it is made before either party presents opening arguments or calls any witnesses. *In re M.A.*, 293 Ill. App. 3d 995, 999-1000 (1997); *In re Dryjanski*, 282 Ill. App. 3d 161, 164 (1996).

¶ 29    The appellate court in this case adhered to this precedent. 2012 IL App (5th) 100422, ¶ 15. The State contends that it was wrong to do so, arguing that allowing jury demands to be asserted just before trial is scheduled to commence may create significant logistical problems and inconvenience and permit litigants to abuse the process. In the State's view, the proper approach is to require that jury demands in involuntary admissions cases be asserted within a reasonable time after the case was initiated and, if the hearing in the case has been rescheduled, to bar any jury demand asserted "either at or right before the rescheduled trial."

¶ 30    If the State believed James W.'s jury demand was untimely, it was incumbent on the State to raise that objection in the circuit court in the first instance. It failed to do so. We note, moreover, that none of the potential problems cited by the State were actually present here. The State makes no claim in our court and it made no claim in the circuit court that the timing of the jury demand actually had any adverse effect on its ability to present its case. In addition, there is nothing in the record to suggest that James W. timed his jury demand to obstruct or delay the proceedings or for any other improper purpose. Under all of these circumstances, we cannot say that the appellate court erred when it rejected the State's argument that James failed to act seasonably in invoking his right to a jury trial under section 3-802 of the Mental Health Code (405 ILCS 5/3-802 (West 2010)).

¶ 31    While James's jury demand was not untimely, his decision to make that demand as the trial was scheduled to begin carried with it one unavoidable consequence: additional delay. It is undisputed that when James W. advised the court of his desire for a jury, no jury was available to hear his case. The next jury weeks available for mental health cases in Randolph County, where this case was pending, were scheduled for August, three months later. When the circuit court advised James W. and his attorney that such was the case, James W. responded that he was willing to wait, even after being cautioned that doing so would mean that he would have to remain at the Chester facility during the interim. James W.'s attorney said nothing to the contrary, made no objection, and suggested no alternatives, *e.g.*, that jurors be summoned prior to the next regularly-scheduled jury weeks.[4]

¶ 32    Because the State was fully prepared to proceed to trial on May 19, because a trial could not be held on that day solely because James W. made a last-minute election to invoke his right to a jury notwithstanding the fact that no jury was available then, and because neither James nor his attorney demanded or even mentioned the possibility of calling a jury prior to the next regularly scheduled jury weeks, one could reasonably view James's request for a jury trial as tantamount to a request by him for an additional continuance until August, when a jury would be available. As set forth above, section 3-800(b)'s 15-day limitation on the duration of continuances is inapplicable where the continuance is requested by the respondent. 405 ILCS 5/3-800(b) (West 2010). An argument could therefore be made that the deadlines set forth in the Mental Health Code were not only not exceeded in this case, they were not even implicated.

¶ 33    That, however, is not the argument the State has chosen to make here. For purposes of this case, the State accepts the proposition that rescheduling the hearing in order to accommodate James's jury demand was subject to section 3-800(b)'s 15-day limitation on the duration of continuances. 405 ILCS 5/3-800(b) (West 2010). Its argument is that non-compliance with the 15-day limitation does not automatically invalidate a court's subsequent judgment continuing involuntary admission to a mental health facility. Rather, redress is appropriate only where the delay affected the ultimate outcome in a way that was prejudicial to the person whose involuntary commitment the State wished to continue.

¶ 34    In the appellate court, James W. did not dispute that failure to strictly comply with the requirements of the Mental Health Code does not always mandate reversal of the circuit

_____

[4]Because neither James nor his lawyer ever questioned the scheduling or suggested that the jury trial be set more expeditiously, we cannot agree with the appellate court that James was somehow forced to choose between "foregoing his statutory right to ask for a jury or waiting 97 days for a hearing." 2012 IL App (5th) 100422, ¶ 29. James was never asked to make any choice. He demanded a jury trial, the circuit court agreed to give him one when a jury would next be available, and he and his attorney assented to the scheduling without complaint. Had James or his attorney balked at an August trial date, the trial court may well have been willing to consider alternatives. Based on the record before us, there is no reason to believe it would have done otherwise. Had the matter been addressed promptly, when the trial court was in a position to do something about it, the ensuing litigation could therefore have been avoided.

court's judgment in an involuntary admissions case. James acknowledged, and the appellate court held, that reversal is required only when the failure to strictly comply with statutory requirements, including the time limits in section 3-800(b), is unreasonable and prejudicial. 2012 IL App (5th) 100422, ¶ 16.

¶ 35 The proposition that failure to strictly adhere to section 3-800(b)'s 15-day limitation does not, in itself, render the circuit court's judgment invalid is consistent with this court's recent decision in *In re M.I.*, 2013 IL 113776 regarding the difference between statutory commands which are mandatory and those which are directory. As we explained in that case, the law presumes that statutory language issuing a procedural command to a government official is directory rather than mandatory, meaning that the failure to comply with a particular procedural step will not have the effect of invalidating the governmental action to which the procedural requirement relates. That presumption can be overcome under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading. *Id.* ¶¶ 16-17. Neither circumstance, however, is present here.

¶ 36 Although section 3-800(b) provides that continuances "shall not" extend beyond 15 days except under certain circumstances, it contains no negative language preventing further action in the event that the time limit is not met. In other words, it imposes no consequences, such as dismissal of the State's petition, if the hearing occurs after the designated time frame. Moreover, this is not a situation where the right the provision is designed to protect would generally be injured under a directory reading. The purpose of the statute is to insure that determinations regarding whether a person meets the requirements for involuntary admission are made expeditiously so that appropriate care may be provided when necessary and so that citizens are not subject to detention when there is no reason for them to be held involuntarily. Rigid adherence to a 15-day time limit is not essential to achievement of those objectives. To be sure, depending on the facts of the case, delays longer than 15 days may be detrimental. As the State points out, however, there may well be situations where the additional time may inure to a patient's benefit, allowing his mental state to stabilize or improve. In addition, the statute is not limited to proceedings for continuation of involuntary admission. It also applies to other court hearings under chapter 3 of the Mental Health Code, including initial involuntary admissions. See 405 ILCS 5/3-800(a) (West 2010). In some cases, a patient may therefore not even be in custody pending the hearing, eliminating the risk that he or she may be improperly confined prior to the hearing. Furthermore, where a patient requests that a jury determine whether he or she is a person subject to involuntary commitment, allowing additional time insures the court will have sufficient opportunity to properly address the logistical issues inherent in scheduling jury trials and affords the patient and counsel extra time to adequately prepare for the more complex task of presenting a case to a jury. Under these circumstances, we hold that section 3-800(b)'s 15-day requirement is directory, rather than mandatory. Accordingly, the fact that the jury trial in this case was not held within that time frame does not, in itself, render the judgment subsequently entered by the circuit court fatally infirm.

¶ 37 Having thus resolved the central legal questions which warranted our review under the public interest exception to the mootness doctrine, the next issue we must consider is whether

the appellate court erred when it concluded that James was prejudiced by having his jury trial scheduled when it was. For the reasons that follow, we believe that it did.

¶ 38    The record demonstrates that at the time the State filed its petition to continue James W.'s involuntary admission, he was suffering from mental illness so severe that it had required him to be hospitalized involuntarily for over six years without interruption. There was no medical evidence that his status had changed since his previous involuntary admission hearing. To the contrary, the certificates filed in support of the petition and the report of the doctor who subsequently conducted the independent examination of James W. all showed that his condition had not improved and that the factors necessitating his continued involuntary admission were still present.

¶ 39    James W. does not contend and has never contended that scheduling the trial date for August rather than May conferred any advantage on the State's ability to present its case or handicapped his ability to present his defense. So far as this record shows, the evidence presented at the August trial was precisely the same as the evidence that would have been presented had the trial been held immediately in May. Based on that evidence, the jury unanimously concluded that James remained a person subject to involuntary admission within the meaning of the Mental Health Code, as he had been since 2003. There is no indication whatever that that result would have been any different had the trial been held three months earlier.

¶ 40    James makes no claim that the jury's verdict and the judgment entered on that verdict were not fully supported by the evidence, nor has he shown that the delay in conducting the trial affected the amount of time he was ultimately hospitalized involuntarily. While the particular order at issue here has expired, we presume based on James W.'s medical history and the nature and severity of his illness that he remained hospitalized involuntarily under successive orders. The events giving rise to this appeal occurred more than three years ago. If James subsequently improved to the point where he no longer met the requirements for involuntary admission, there is nothing in the record to substantiate it.[5] Given all of these circumstances, we cannot see how the delay which followed James's request for a jury trial caused him any prejudice.

¶ 41    In their friend of the court brief, Mental Health America of Illinois and the Mental Health Project of the Edwin F. Mandel Legal Aid Clinic argue, among other things, that confinement in a mental hospital is a massive deprivation of liberty; that the vast majority of severely mentally ill patients in Illinois stabilize and are able to be discharged in under 15 days; that lengthy pre-hearing delays pose a high risk of an erroneous deprivation of liberty; and that when hearings are delayed in involuntary commitment cases, the state may be put to unnecessary expense during the interim by having to care for individuals who turn out not to require inpatient care.

---

[5]Counsel represented at oral argument that James was eventually transferred to a facility in Chicago and then discharged. We do not know, however, when or under what circumstances that occurred. Without such information, there is no basis for concluding that the delay here ultimately affected the duration of James's hospitalization.

¶ 42 We do not take issue with any of these propositions. As our discussion of the case should have made clear, however, the concerns expressed by *amici* have no application under the particular facts before us. While the average length of stay in a mental health facility may be short for most patients, James was far from typical. He was profoundly ill, had been hospitalized involuntarily for many years, and had no prospects of immediate recovery. The possibility that the delay here would increase the chance that he would be erroneously detained was virtually nonexistent. Similarly, there was no meaningful risk that state funds would be expended on him unnecessarily. James W.'s eligibility for continued involuntary admission was clear and is unchallenged. So far as we are able to see, he needed every bit of the care he received. Rather than impermissibly infringing on his rights, that care, though involuntary, prevented him from doing harm to himself or others.

¶ 43 Finally, we note that James W. also challenged the circuit court's judgment on the separate and alternate ground that the petition seeking his continued involuntary hospitalization did not meet the requirements of section 3-601 of the Mental Health Code (405 ILCS 5/3-601 (West 2010)) because it did not include the names and addresses of any of his close friends or known relatives. In light of its determination that reversal of the circuit court's judgment was required by the delay triggered by James's jury trial request, the appellate court did not reach the argument. Now that we have concluded that the appellate court's resolution of that issue was erroneous, the question of the sufficiency of the petition must be addressed.

¶ 44 This is a proceeding to continue an involuntary admission on an inpatient basis by court order pursuant to section 3-813 of the Mental Health Code (405 ILCS 5/3-813 (West 2010)). As explained earlier in this opinion, paragraph (b) of section 3-813 provides that the same provisions of chapter 3 of the Mental Health Code (405 ILCS 5/3-100 *et seq.* (West 2010)) applicable when an initial order of commitment is sought also apply where, as here, an additional period of commitment is sought.

¶ 45 Initial petitions for admission on an inpatient basis by court order are governed by section 3-701 of the Mental Health Code. Paragraph (a) of that provision (405 ILCS 5/3-701(a) (West 2010)) states that petitions for involuntary admission on an inpatient basis by court order shall be prepared pursuant to paragraph (b) of section 3-601 (405 ILCS 5/3-601(b) (West 2010)). That paragraph, in turn, specifies that petitions shall include:

> "[t]he name and address of the spouse, parent, guardian, substitute decision maker, if any, and close relative, or if none, the name and address of any known friend of the respondent whom the petitioner has reason to believe may know or have any of the other names and addresses. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3-601(b)(2) (West 2010).

¶ 46 The petition at issue in this case included a paragraph addressed to the foregoing requirement. It specified that the pertinent information was "listed below." In the appropriate space, it listed "Psychologist 3," an apparent reference to Dr. Kathryn Holt, who provided one of the two certificates supporting the petition. In addition, attached to the petition was a copy of James W.'s treatment plan, which clearly set out the names and phone numbers of James's sisters and a cousin.

¶ 47    Why exactly Dr. Holt's name was included in this portion of the petition is unclear. Ultimately, however, it is also of no consequence. In the trial court neither James nor his attorney made any claim that the information contained in the petition did not sufficiently comply with the provisions of section 3-601(b), and there is no indication that the specificity of the information in the petition regarding family members, friends or other contacts had any bearing whatever on any aspect of this case. To the extent there were defects in this regard, they were not prejudicial. See *People v. Gerich*, 22 Ill. App. 3d 575, 580 (1974). We have not found and counsel for James has not cited any authority that would warrant reversal of the circuit court's judgment under such circumstances.

¶ 48                                         CONCLUSION

¶ 49    For the foregoing reasons, the appellate court erred when it reversed the circuit court's judgment continuing James W.'s involuntary admission to the Chester Mental Health Center on the grounds that the delay in conducting the hearing was excessive. In addition, the circuit court's judgment is not subject to challenge on the grounds that the State's petition failed to meet the requirements of section 3-601 of the Mental Health Code. The appellate court's judgment is therefore reversed. The judgment of the circuit court is affirmed.

¶ 50    Appellate court judgment reversed.

¶ 51    Circuit court judgment affirmed.

¶ 52    JUSTICE THEIS, specially concurring:

¶ 53    I agree with the majority's holding that James W.'s jury demand was timely because it was made before either party presented opening arguments or called any witnesses. Similarly, I concur with the majority's finding that the timing provision found in section 3-800(b) of the Mental Health Code (405 ILCS 5/3-800(b) (West 2010)) is directory, rather than mandatory, and that under the unique circumstances here, James W. was not prejudiced by the trial court's delay in scheduling his jury trial.

¶ 54    I write separately to highlight my concern about the trial court's disregard in this case for the direction contained in section 3-800(b). This provision provides that in involuntary commitment proceedings a continuance is limited to 15 days unless it is attributed to the respondent. *Id.* James W. was not responsible for the continuance that occurred after he exercised his right to a jury trial on May 19, 2010. Nevertheless, he was told by the court that the next available date for a jury for mental health cases in Randolph County, where this case was pending and Chester Mental Health Center is located, was not for another three months. While I recognize that some postponement was unavoidable to accommodate James W.'s demand, which was made on the day the trial was scheduled to begin, a 96-day delay was excessive.

¶ 55    The length of the delay in this case is troubling. As the appellate court below recognized, had the hearing been held closer to the time James W. requested a jury, the State would have been required to file a new petition for continued admission much earlier. Instead, the delay

- 13 -

resulted in James W. remaining in Chester Mental Health Center without a hearing for more than half the 180-day duration of an order authorizing continued involuntary admission. See 405 ILCS 5/3-813(b) (West 2010).

¶ 56     A special jury should have been called in order to give James W. a trial much sooner than was possible under the procedures that had evidently been established in Randolph County for mental health cases. I believe that unless practices and procedures are instituted by circuit courts in this state to facilitate their compliance with the statutory timeline found in section 3-800(b), particularly in counties having mental health facilities, the type of delay that occurred here will inevitably repeat itself, and in another case presenting different facts, possibly harming the fundamental liberty interests at stake in involuntary commitment proceedings (see *In re Stephenson*, 67 Ill. 2d 544, 554 (1977)).

¶ 57     JUSTICE BURKE, concurring in part and dissenting in part:

¶ 58     On April 29, 2010, the director of the Chester Mental Health Center filed a petition seeking the continued involuntary admission of the respondent, James W. At a hearing on May 19, James requested a jury trial pursuant to section 3-802 of the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/3-802 (West 2010)). That provision states:

> "The respondent is entitled to a jury on the question of whether he is subject to involuntary admission on an inpatient or outpatient basis. The jury shall consist of 6 persons to be chosen in the same manner as are jurors in other civil proceedings. A respondent is not entitled to a jury on the question of whether psychotropic medication or electroconvulsive therapy may be administered under Section 2-107.1."

¶ 59     After James made his request, the circuit court informed him that no juries were available until August and asked James if he understood that he would have to remain at the Chester Mental Health Center until that time. James stated that he understood. A trial was subsequently held on August 23, 2010, and the jury found respondent subject to involuntary admission. The circuit court entered judgment on the verdict.

¶ 60     On appeal, James argued for the first time that the 96-day period between May 19 (when he requested a jury trial) and August 23 (when the jury trial was held), was longer than permitted by the Mental Health Code. In support, James pointed to section 3-800(b) (405 ILCS 5/3-800(b) (West 2010)). That provision states:

> "(b) If the court grants a continuance on its own motion or upon the motion of one of the parties, the respondent may continue to be detained pending further order of the court. Such continuance shall not extend beyond 15 days except to the extent that continuances are requested by the respondent."

¶ 61     While James's case was pending on appeal, the 180-day involuntary admission order entered by the circuit court expired, rendering the case moot. However, the appellate court addressed the timeliness of James's jury trial under the public interest exception to the mootness doctrine. The appellate court acknowledged that some delay for James's trial was inevitable given that James did not make his jury demand until just before the May 19

- 14 -

evidentiary hearing was about to begin. However, the appellate court concluded that the prejudice from the 96-day delay here was "self-evident." 2012 IL App (5th) 100422. The appellate court rejected the State's argument that James had agreed to the delay and, therefore, reversed the judgment of the circuit court. This appeal followed.

¶ 62    A threshold question in this appeal is whether the 15-day continuance rule set forth in section 3-800(b)—the rule which forms the basis of James's timeliness argument—applies to a request for a jury trial. Specifically, is a request for a jury trial a "continuance" within the meaning of section 3-800(b) and, if so, is that continuance charged to the State or the respondent? The majority does not answer this question.

¶ 63    The majority observes that, under the circumstances of this case, "one could reasonably view James's request for a jury trial as tantamount to a request by him for an additional continuance until August, when a jury would be available." *Supra* ¶ 32. And because the 15-day limitation on continuances is inapplicable when the continuance is requested by the respondent, "[a]n argument could therefore be made that the deadlines set forth in the Mental Health Code were not only not exceeded in this case, they were not even implicated." *Id.*

¶ 64    The majority further notes, however, that the State did not make this argument. Accordingly, the majority assumes, without deciding, that the 15-day continuance rule does apply to a request for a jury trial, and also assumes, without deciding, that the continuance is charged to the State. Operating under these assumptions, the majority determines that the 15-day limitation on continuances was violated in this case but that James was not prejudiced by the delay which followed his request for a jury trial. *Supra* ¶¶ 33-42. The majority therefore reverses the judgment of the appellate court on this issue.

¶ 65    As a general matter, there is nothing wrong with ruling, as the court does here, "in the subjunctive mode, *i.e.*, 'were this to be the law, we would still rule as we do.' " *Ludemo v. Klein*, 771 Supp. 260, 261 (N.D. Ill. 1991). However, when a court rules in this fashion, the only question that is actually resolved is the proper disposition of the litigation for the complainant. The broader legal rule is necessarily left undecided. This presents a problem when the case, like this one, is moot.

¶ 66    As the majority notes, a reviewing court may review an issue in a moot case under the public interest exception to the mootness doctrine. *Supra* ¶ 20. One of the criteria for application of this exception is that "an authoritative determination is necessary to guide public officers in future cases." *In re Andrew B.*, 237 Ill. 2d 340, 347 (2010). The majority, by only deciding what the proper disposition of this issue is for James, and not deciding the broader legal rule, fails to meet this criterion.

¶ 67    To put it in concrete terms, consider the following. A circuit court judge is presented with a petition seeking involuntary commitment. The respondent requests a jury trial. One of the very first questions the judge is going to need answered is when the case must be scheduled. Is the judge required to hold the jury trial within 15 days or not? The majority opinion here does not answer that question, expressly leaving it unresolved. *Supra* ¶ 33 (the 15-day rule applies "[f]or purposes of this case"). The majority thus fails to provide an "authoritative determination" "to guide public officers in future cases." *Andrew B.*, 237 Ill. 2d at 347. And, in the absence of that authoritative determination, we should not be addressing what is otherwise

- 15 -

a moot issue. I therefore cannot join that portion of the majority opinion that addresses the timeliness of James's jury trial.

¶ 68    However, rather than simply leaving the issue of statutory interpretation unresolved because the State has not argued it, I would order the parties to submit supplemental briefing on whether the 15-day continuance rule set forth in section 3-800(b) applies to a request for a jury trial and, if so, whether the continuance is charged to the State or the respondent. Because the majority does not do this, I respectfully dissent.

¶ 69    CHIEF JUSTICE GARMAN and JUSTICE FREEMAN join in this partial concurrence and partial dissent.